## SOCIAL SECURITY BOARD *v.* NIEROTKO.

No. 318.   Argued December 12, 1945.—Decided February 25, 1946.

*Paul A. Sweeney* argued the cause for petitioner. With him on the brief were *Solicitor General McGrath, Assistant Attorney General Sonnett* and *Joseph B. Goldman.*

*Ernest Goodman* argued the cause for respondent. With him on the brief was *Morton A. Eden.*

MR. JUSTICE REED delivered the opinion of the Court.

A problem as to whether "back pay," which is granted to an employee under the National Labor Relations Act, shall be treated as "wages" under the Social Security Act comes before us on this record. If such "back pay" is a wage payment, there is also at issue the proper allocation of such sums to the quarters of coverage for which the "back pay" was allowed.

The respondent, Joseph Nierotko, was found by the National Labor Relations Board to have been wrongfully discharged for union activity by his employer, the Ford Motor Company, and was reinstated by that Board in his employment with directions for "back pay" for the period February 2, 1937, to September 25, 1939.[1] The "back

---

[1] National Labor Relations Act, § 10 (c), 49 Stat. 454.

pay" was paid by the employer on July 18, 1941. Thereafter Nierotko requested the Social Security Board to credit him in the sum of the "back pay" on his Old Age and Survivor's Insurance account with the Board.[2] In conformity with its minute of formal general action of March 27, 1942, the Board refused to credit Nierotko's "back pay" as wages. On review of the Board's decision,[3] the district court upheld the Board. The circuit court of appeals reversed. 149 F. 2d 273. On account of the importance of the issues in the administration of the Social Security Act, we granted certiorari.[4] 326 U. S. 700; Judicial Code § 240.

During the period for which "back pay" was awarded respondent the federal old age benefits were governed by Title II of the Social Security Act of 1935. 49 Stat. 622. As Title II of the Social Security Act Amendments of 1939 became effective January 1, 1940 (53 Stat. 1362), the actual payment of the "back wages" occurred thereafter. In our view the governing provisions which determine whether this "back pay" is wages are those of the earlier enactment.[5]

---

[2] Social Security Act, § 205 (c) (3), 53 Stat. 1369.

[3] § 205 (g).

[4] The briefs of the Government advise us that more than thirty thousand individual employees were allowed "back pay" in "closed" cases by the National Labor Relations Board under § 10 (c), 49 Stat. 454, in the period 1939–1945. See Phelps Dodge Corp. v. Labor Board, 313 U. S. 177, 187, Second. The aggregate in money exceeded $7,700,000 in the fiscal years 1939 to 1944, as shown by the reports of the N. L. R. B. for those years.

[5] By the foregoing statement it is not intended to imply that the variations in the definitions of wages between the two enactments are significant on the issues herein considered. Sec. 209 (b) of the Amendment recognizes possible differences in the meaning of employment: "(b) The term 'employment' means any service performed after December 31, 1936, and prior to January 1, 1940, which was employment

Wages are the basis for the administration of federal old age benefits. 49 Stat. 622. Only those who earn wages are eligible for benefits.[6] The periods of time during which wages were earned are important and may be crucial on eligibility under either the original act or the Amendments of 1939. See § 210 (c) and compare § 209

as defined in section 210 (b) of the Social Security Act prior to January 1, 1940 (except service performed by an individual after he attained the age of sixty-five if performed prior to January 1, 1939), and any service, of whatever nature, performed after December 31, 1939, by an employee for the person employing him . . ."

[6] "SEC. 202. (a) Every qualified individual (as defined in section 210) shall be entitled to receive, with respect to the period beginning on the date he attains the age of sixty-five, or on January 1, 1942, whichever is the later, and ending on the date of his death, an old-age benefit (payable as nearly as practicable in equal monthly installments) as follows:

(1) If the total wages (as defined in section 210) determined by the Board to have been paid to him, with respect to employment (as defined in section 210) after December 31, 1936, and before he attained the age of sixty-five, were not more than $3,000, the old-age benefit shall be at a monthly rate of one-half of 1 per centum of such total wages;

(2) If such total wages were more than $3,000, the old-age benefit shall be at a monthly rate equal to the sum of the following:

(A) One-half of 1 per centum of $3,000; plus
(B) One-twelfth of 1 per centum of the amount by which such total wages exceeded $3,000 and did not exceed $45,000; plus
(C) One-twenty-fourth of 1 per centum of the amount by which such total wages exceeded $45,000."

SEC. 210. "(c) The term 'qualified individual' means any individual with respect to whom it appears to the satisfaction of the Board that—

(1) He is at least sixty-five years of age; and
(2) The total amount of wages paid to him, with respect to employment after December 31, 1936, and before he attained the age of sixty-five, was not less than $2,000; and
(3) Wages were paid to him, with respect to employment on some five days after December 31, 1936, and before he attained the age of sixty-five, each day being in a different calendar year."

(g), 53 Stat. 1376.[7] The benefits are financed by payments from employees and employers which are calculated on wages.[8] The Act defines "wages" for old age benefits as follows:

"SEC. 210. When used in this title—

(a) The term 'wages' means all remuneration for employment, including the cash value of all remuneration paid in any medium other than cash; . . ."

---

[7] SEC. 209. "(g) The term 'fully insured individual' means any individual with respect to whom it appears to the satisfaction of the Board that—

(1) He had not less than one quarter of coverage for each two of the quarters elapsing after 1936, or after the quarter in which he attained the age of twenty-one, whichever quarter is later, and up to but excluding the quarter in which he attained the age of sixty-five, or died, whichever first occurred, and in no case less than six quarters of coverage; or

(2) He had at least forty quarters of coverage.

As used in this subsection, and in subsection (h) of this section, the term 'quarter' and the term 'calendar quarter' mean a period of three calendar months ending on March 31, June 30, September 30, or December 31; and the term 'quarter of coverage' means a calendar quarter in which the individual has been paid not less than $50 in wages. . . ."

[8] 49 Stat. 636–37:

"SECTION 801. In addition to other taxes, there shall be levied, collected, and paid upon the income of every individual a tax equal to the following percentages of the wages (as defined in section 811) received by him after December 31, 1936, with respect to employment (as defined in section 811) after such date:

(1) With respect to employment during the calendar years 1937, 1938, and 1939, the rate shall be 1 per centum. . . ."

"SEC. 804. In addition to other taxes, every employer shall pay an excise tax, with respect to having individuals in his employ, equal to the following percentages of the wages (as defined in section 811) paid by him after December 31, 1936, with respect to employment (as defined in section 811) after such date:

(1) With respect to employment during the calendar years 1937, 1938, and 1939, the rate shall be 1 per centum. . . ."

Employment is defined thus:

> "(b) The term 'employment' means any service, of whatever nature, performed within the United States by an employee for his employer, except—"

The tax titles of the Social Security Act have identical definitions of wages and employment.[9] An employee under the Social Security Act is not specifically defined but the individual to whom the Act's benefits are to be paid is one receiving "wages" for "employment" in accordance with § 210 (c) and employment is service by an "employee" to an "employer." Obviously a sharply defined line between payments to employees which are wages and which are not is essential to proper administration.[10]

Under the National Labor Relations Act an employee is described as "any individual whose work has ceased . . . because of any unfair labor practice." § 2 (3), 49 Stat. 450. The enforcement provisions of this Act under which Nierotko received his "back pay" allow the Labor Board to reinstate "employees with or without back pay." § 10 (c). The purpose of the "back pay" allowance is to effectuate the policies of the Labor Act for the preservation of industrial peace.[11]

---

[9] §§ 811 (a) and (b), and 907 (b) and (c).

[10] Provisions similar to those quoted are found in the Social Security Act Amendments of 1939. See §§ 202 (a), 202 (e), 203 (d), 209 (a), (b), (e), (g), (h), and 601, 604, and 606 at 53 Stat. 1363 *et seq.*

[11] 49 Stat. 449:
"It is hereby declared to be the policy of the United States to eliminate the causes of certain substantial obstructions to the free flow of commerce and to mitigate and eliminate these obstructions when they have occurred by encouraging the practice and procedure of collective bargaining and by protecting the exercise by workers of full freedom of association, self-organization, and designation of representatives of their own choosing, for the purpose of negotiating the terms and conditions of their employment or other mutual aid or protection."

The purpose of the federal old age benefits of the Social Security Act is to provide funds through contributions by employer and employee for the decent support of elderly workmen who have ceased to labor.[12]   Eligibility for these benefits and their amount depends upon the total wages which the employee has received and the periods in which wages were paid.[13]   While the legislative history of the Social Security Act and its amendments or the language of the enactments themselves does not specifically deal with whether or not "back pay" under the Labor Act is to be treated as wages under the Social Security Act, we think it plain that an individual, who is an employee under the Labor Act and who receives "back pay" for a period of time during which he was wrongfully separated from his job, is entitled to have that award of back pay treated as wages under the Social Security Act definitions which define wages as "remuneration for employment" and employment as "any service . . . performed . . . by an employee for his employer . . ."

Surely the "back pay" is "remuneration."   Under § 10 (c) of the Labor Act, the Labor Board acts for the public to vindicate the prohibitions of the Labor Act against unfair labor practices (§ 8) and to protect the right of employees to self-organization which is declared by § 7.[14]  It i also true that, in requiring reparation to the employee through "back pay," reparation is based upon the loss of wages which the employee has suffered from the employer's wrong.   "Back pay" is not a fine or penalty imposed upon the employer by the Board.   Reinstate-

---

[12] See *Helvering* v. *Davis*, 301 U. S. 619, 641; H. Rep. No. 728, 76th Cong., 1st Sess., 3–4; S. Rep. No. 734, 76th Cong., 1st Sess., 3–4.

[13] Under the Social Security Act of 1935, see §§ 202 (a) and 210 (c), *supra*, note 6.   Under the 1939 Amendments, see §§ 202 and 209 (e), (f) and (g), 53 Stat. 1363, *et seq.*

[14] *Virginia Electric Co.* v. *Labor Board*, 319 U. S. 533, 543.

ment and "back pay" are for the "protection of the employees and the redress of their grievances" to make them "whole." *Republic Steel Corp.* v. *Labor Board,* 311 U. S. 7, 11, 12. ". . . a worker's loss in wages and in general working conditions must be made whole." *Phelps Dodge Corp.* v. *Labor Board,* 313 U. S. 177, 196. A worker is not given "back pay" by the Board equal to what he would have earned with the employer but for the unlawful discharge, but is given that sum less any net earnings during the time between discharge and reinstatement.[15]

Since Nierotko remained an employee under the definition of the Labor Act, although his employer had attempted to terminate the relationship, he had "employment" under that Act and we need consider further only whether under the Social Security Act its definition of employment, as "any service . . . performed . . . by an employee for his employer," covers what Nierotko did for the Ford Motor Company. The petitioner urges that Nierotko did not perform any service. It points out that Congress in considering the Social Security Act thought of benefits as related to "wages earned" for "work done." [16] We are unable, however, to follow the Social Security Board in such a limited circumscription of the word "service." The very words "any service . . . performed . . . for his employer," with the purpose of the Social Security Act in mind, import breadth of coverage. They admonish us against holding that "service" can be only productive activity. We think that "service" as used by Congress in this definitive phrase means not only work

---

[15] *Phelps Dodge Corp.* v. *Labor Board,* 313 U. S. 177, 196, 198. See Third Annual Report, National Labor Relations Board, 202, n. 11; Eighth Annual Report 41; Ninth Annual Report 49. Nierotko's order was in this form, 14 N. L. R. B. 346, 410.

[16] H. Rep. No. 615, 74th Cong., 1st Sess., pp. 6, 21, 32, and S. Rep. No. 628, 74th Cong., 1st Sess., pp. 7, 32.

actually done but the entire employer-employee relationship for which compensation is paid to the employee by the employer.[17]

An argument against the interpretation which we give to "service performed" is the contrary ruling of the governmental agencies which are charged with the administration of the Social Security Act. Their competence

---

[17] For example the Social Security Board's Regulations No. 3 in considering "wages" treats vacation allowances as wages. 26 CFR, 1940 Supp., 402.227 (b).

Compare *Armour & Co.* v. *Wantock*, 323 U. S. 126, 133.

Treasury Department Regulations No. 91 relating to the Employees' Tax and the Employer's Tax under Title VIII of the Social Security Act, 1936, Art. 16, classifies dismissal pay, vacation allowances or sick pay as wages. Regulations, 106 under the Federal Insurance Contributions Act, 1940, pp. 48, 51, continues to consider vacation allowances as wages. It differentiates voluntary dismissal pay,

I. R. B., 1940, 1–22–10271, S. S. T. 389, an Office Decision, holds that amounts paid employees during absence on jury service to make their pay equivalent to regular salary are wages.

Though formal action was taken by the Social Security Board on March 27, 1942, our attention has not been called to any regulation of any governmental agency excluding "back pay" from wages. The Treasury Department has authority to issue regulations for Social Security taxes. §§ 808 and 908, 49 Stat. 638, *et seq.;* I. R. C., § 1429, 53 Stat. 178. So has the Social Security Board, § 1102, 49 Stat. 647, and § 205 (a), 53 Stat. 1368. All authority for the promulgation of regulations limits the action to rules and regulations not inconsistent with the provisions of the various sections.

In regulations governing the collection of income taxes at source on or after January 1, 1945, 58 Stat. 247, the Bureau of Internal Revenue classified vacation allowances and dismissal pay as wages under the following statutory definition of wages:

"Sec. 1621. Definitions. As used in this subchapter—

(a) Wages.—The term 'wages' means all remuneration (other than fees paid to a public official) for services performed by an employee for his employer, including the cash value of all remuneration paid in any medium other than cash; except that such term shall not include remuneration paid—" See 26 CFR, 1944 Supp., 405.101 (d) and (e).

and experience in this field command us to reflect before we decide contrary to their conclusion. The first administrative determination was apparently made in 1939 by an Office Decision of the Bureau of Internal Revenue on the problem of whether "back pay" under a Labor Board order was wages subject to tax under Titles VIII and IX of the Social Security Act which the Bureau collects.[18] The back pay was held not to be subject as wages to the tax because no service was performed, the employer had tried to terminate the employment relationship and the allowance of back pay was discretionary with the Labor Board. Reliance for the conclusions was placed upon *Agwilines, Inc.* v. *Labor Board,* 87 F. 2d 146, which had held "back pay" a public reparation order and therefore not triable by jury as a private right for wages would have been. This position is maintained by the Social Security Board by minute of March 27, 1942. It is followed by the National Labor Relations Board which at one time approved the retention by the employer of the tax on the employees' back pay for transmission to the Treasury Department as a tax on wages but later reversed its position on the authority of the Office Decision to which reference has just been made. *Re Pennsylvania Furnace & Iron Co.,* 13 N. L. R. B. 49, 53 (5), 54, 58.[19]

The Office Decision seems to us unsound. The portion of the *Agwilines* decision, which the Office Decision relied upon, was directed at the constitutional claim to a right of trial by jury. It stated that "back pay" was not a penalty or damages which a private individual might

---

[18] I. R. B., 1939, 1–14–9776, S. S. T. 359. No regulations covering "back pay" under the Social Security Act have been found. They are authorized by §§ 808 and 908, 49 Stat. 638, 643.

[19] The States have largely followed the Bureau of Internal Revenue in their classification of "back pay." Some have disagreed. Unemployment Insurance Service, All State Treatise, C. C. H., Paragraph 1201. See *Matter of Tonra,* 258 App. Div. 835, 15 N. Y. S. 2d 755; 283 N. Y. 676, 28 N. E. 2d 402.

claim. But there is nothing in the opinion which supports the idea that the "back pay" award differs from other pay. Indeed the opinion said that "Congress has the right to eradicate them [unfair practices] as from the beginning." 87 F. 2d at 151, l. c. We think the true relation of awards of "back pay" to compensation appears in the *Republic Steel* and *Phelps-Dodge* cases, hereinbefore discussed.[20]

But it is urged by petitioner that the administrative construction on the question of whether "back pay" is to be treated as wages should lead us to follow the agencies' determination. There is a suggestion that the administrative decision should be treated as conclusive, and reliance for that argument is placed upon *Labor Board* v. *Hearst Publications,* 322 U. S. 111, 130, and *Gray* v. *Powell,* 314 U. S. 402, 411. In the acts which were construed in the cases just cited, as in the Social Security Act, the administrators of those acts were given power to reach preliminary conclusions as to coverage in the application of the respective acts. Each act contains a standardized phrase that Board findings supported by substantial evidence shall be conclusive.[21] The validity of regulations is specifically reserved for judicial determination by the Social Security Act Amendments of 1939, § 205 (g).

The Social Security Board and the Treasury were compelled to decide, administratively, whether or not to treat "back pay" as wages; and their expert judgment is entitled, as we have said, to great weight.[22] The very fact

---

[20] This was the view of the Eighth Circuit when a "back pay" claim was presented in bankruptcy. *Labor Board* v. *Killoren,* 122 F. 2d 609, 614.

[21] National Labor Relations Act, 49 Stat. 454, § 10 (e); Bituminous Coal Act of 1937, 50 Stat. 72, 85, § 4–A; Social Security Act Amendments of 1939, § 205 (c) (3) and (g).

[22] See *Sanford* v. *Commissioner,* 308 U. S. 39, 52; *Skidmore* v. *Swift & Co.,* 323 U. S. 134, 139–40.

that judicial review has been accorded, however, makes evident that such decisions are only conclusive as to properly supported findings of fact. Both *Hearst Publications*, p. 131, and *Gray* v. *Powell*, p. 411, advert to the limitations of administrative interpretations. Administrative determinations must have a basis in law and must be within the granted authority. Administration, when it interprets a statute so as to make it apply to particular circumstances, acts as a delegate to the legislative power. Congress might have declared that "back pay" awards under the Labor Act should or should not be treated as wages. Congress might have delegated to the Social Security Board to determine what compensation paid by employers to employees should be treated as wages. Except as such interpretive power may be included in the agencies' administrative functions, Congress did neither. An agency may not finally decide the limits of its statutory power. That is a judicial function.[23] Congress used a well understood word—"wages"— to indicate the receipts which were to govern taxes and benefits under the Social Security Act. There may be borderline payments to employees on which courts would follow administrative determination as to whether such payments were or were not wages under the act.

We conclude, however, that the Board's interpretation of this statute to exclude back pay goes beyond the boundaries of administrative routine and the statutory limits. This is a ruling which excludes from the ambit

---

[23] *American School of Magnetic Healing* v. *McAnnulty*, 187 U. S. 94, 110; *International R. Co.* v. *Davidson*, 257 U. S. 506, 514; *Iselin* v. *United States*, 270 U. S. 245; *Koshland* v. *Helvering*, 298 U. S. 441; *Federal Communications Comm'n* v. *Pottsville Broadcasting Co.*, 309 U. S. 134, 144–145; *United States* v. *Carolina Carriers Corp.*, 315 U. S. 475, 489; *Helvering* v. *Credit Alliance Co.*, 316 U. S. 107, 113; *Helvering* v. *Sabine Transportation Co.*, 318 U. S. 306, 311–12; *Addison* v. *Holly Hill Co.*, 322 U. S. 607, 611, *et seq.*; cf. *Steuart & Bro.* v. *Bowles*, 322 U. S. 398, 403.

of the Social Security Act payments which we think were included by Congress. It is beyond the permissible limits of administrative interpretation.

Petitioner further questions the validity of the decision of the circuit court of appeals on the ground that it must be inferred from the opinion that the "back pay" must be allocated as wages by the Board to the "calendar quarters" of the year in which the money would have been earned, if the employee had not been wrongfully discharged. We think this inference is correct.[24] This conclusion, petitioner argues, tends to show that "back pay" cannot be wages because the Amendments of 1939 use "quarters" as the basis for eligibility as well as the measure of benefits and require "wages" to be "paid" in certain "quarters." [25]

If, as we have held above, "back pay" is to be treated as wages, we have no doubt that it should be allocated to the periods when the regular wages were not paid as usual. Admittedly there are accounting difficulties which the Board will be called upon to solve but we do not believe they are insuperable.[26]

*Affirmed.*

MR. JUSTICE JACKSON took no part in the consideration or decision of this case.

MR. JUSTICE FRANKFURTER, concurring.

The decisions of this Court leave no doubt that a man's time may, as a matter of law, be in the service of another

---

[24] See *Nierotko* v. *Social Security Board,* 149 F. 2d 273, 274, r. c.

[25] See note 7, *supra.* The same problem would arise under the Social Security Act, 49 Stat. 625, § 210 (c).

[26] The Social Security Board itself has recommended the inclusion of "back pay" in wages. Annual Report of the Federal Security Agency, Social Security Board (1945), § 5, p. 398:

"Certain items of income which are now not considered 'wages' under the definition in the act, should be included as wages, so that the

though he be inactive. *E. g., Armour & Co.* v. *Wantock,* 323 U. S. 126. This is, practically speaking, the ordinary situation of employment in a "stand-by" capacity. *United States* v. *Local 807,* 315 U. S. 521, 535. The basis of a back-pay order under the National Labor Relations Act, 49 Stat. 449, 29 U. S. C. § 151, is precisely that. When the employer is liable for back pay, he is so liable because under the circumstances, though he has illegally discharged the employee, he still absorbs his time. *Phelps Dodge Corp.* v. *Labor Board,* 313 U. S. 177. In short, an employer must pay wages although, in violation of law, he has subjected his employee to enforced idleness. Since such compensation is in fact paid as wages, it is a plain disregard of the law for the Social Security Board not to include such payments among the employees' wages. Neither the terms of the Social Security Act, 49 Stat. 620, 53 Stat. 1360, 42 U. S. C. § 301, nor the implications of policy, comparable to some aspects of the Railway Labor Act, 44 Stat. 577, 48 Stat. 926, 48 Stat. 1185, 49 Stat. 1921, 54 Stat. 785, 45 U. S. C. § 151, give the Board judicially unreviewable authority to exclude from wages what as a matter of law are wages. And so I concur in the decision of the Court.

---

base for benefits would represent the worker's actual remuneration from employment. These include tips, dismissal payments which the employer is not legally required to make but nevertheless does make, and payments made under orders of the National Labor Relations Board or a similar State board."

A pending bill, S. 1050, 79th Cong., 1st Sess., Part F, § 275, makes provision for the inclusion in wages under the Social Security Act of sums paid pursuant to the National Labor Relations Act.

"Back pay" is now treated distributively under the Internal Revenue Code. § 119, Revenue Act of 1943, 58 Stat. 39.