**TOBIN, Secretary of Labor, v. TRADERS COMPRESS CO.**

No. 4417.

United States Court of Appeals Tenth Circuit.

Sept. 2, 1952.

Rehearing Denied Oct. 1, 1952.

Pickett, Circuit Judge, dissented.

Bessie Margolin, Asst. Solicitor, U. S. Department of Labor, Washington, D. C. (William S. Tyson, Solicitor, William A. Lowe, and David F. Babson, Jr., Attorneys, Washington, D. C., on the brief), for appellant.

John H. Todd, Washington, D. C. (C. B. Cochran, Oklahoma City, Okl., on the brief), for appellee.

Before BRATTON, MURRAH and PICKETT, Circuit Judges.

MURRAH, Circuit Judge.

Five employees of the appellee, Traders Compress Company, brought this suit under the Fair Labor Standards Act, c. 676, 52 Stat. 1060; c. 736, 63 Stat. 910, 29 U. S.C.A. § 201 et seq., to recover the difference between the minimum statutory rate of 75¢ per hour and 47½¢ per hour, paid during the period in question. The Compress admitted the employment, the hours worked and the rate of pay, but defended on the ground, among others, that the employees were exempt from the coverage of the Act by virtue of Section 13(a) (10), which provides in material part that the Act shall not apply to "any individual employed within the area of production (as defined by the Administrator), engaged in * * * compressing * * * agricultural * * * commodities for market * * *." The Secretary of Labor, who is entrusted with the administration of the Fair Labor Standards Act, intervened, charging violations of the Act with respect to wages, and sought injunctive relief against such violations.

During the time material here, the Administrator's definitive regulation, 29 C. F.R. Paragraph 536.2, promulgated after hearings, pertinently provided that an individual shall be regarded as employed in the "area of production" within the meaning of Section 13(a) (10) of the Fair Labor Standards Act in compressing agricultural commodities if the establishment where he is employed is located in open country, or in a rural community, and ninety-five per cent of the commodities on which the operations are performed by the establishment come from the normal rural sources of supply located not more than fifty air miles from the establishment. And, for purposes of the regulation, "open country" or "rural community" should not include any city, town or urban place of 2500 or greater population. In short, to be exempt under the definition, the employees here must have been employed in an establishment not in or near a city or town of more than 2500 population, and within fifty air miles of ninety-five per cent of the sources of supply of the commodities received and on which operations at the establishment were performed.

The appellee concedes that its establishment is not within an area of production as defined by the Administrator, but attacks the definition as not within the statutory intendment, hence arbitrary and capricious. It takes the position that since its plant is actually located within an area where cotton is produced in large quantities, and the operations are as described in the exemption, they come within the exemption, and it is contrary to its intended meaning to allow the Administrator to base his definition of "area of production" on artificial distances and population.

The trial court was of the view that the definition gave undue consideration to the achievement of the economic balance between the interest of rural agricultural labor on one hand and urban industrial labor on the other. Observing that the Administrator's definition would almost entirely eliminate compress-warehouses from exemption—a result not intended—the court concluded that the definition had no reasonable relationship to the purposes of the exemption, and was therefore arbitrary and capricious. It accordingly denied any relief, but retained jurisdiction until such time as the Administrator promulgated a valid definition of "area of production".

The definitive regulation now under attack was promulgated after a prior regulation, 29 C.F.R. (Supp.1939) Paragraph 536.2 (a) (d), p. 2240, had been partially condemned in Addison v. Holly Hill Fruit Products, Inc., 322 U.S. 607, 64 S.Ct. 1215, 1219, 88 L.Ed. 1488. In addition to the distance and population criteria, the regulation considered in the Addison case contained a limitation on the allowable number of employees in an establishment within the exempt geographic bounds. The establishment in that case met the population, but not the distance or number of employees test. After reviewing the legisla-

tive background of the "parenthetical qualifications '(as defined by the Administrator)' ", the court observed that the textual meaning of "area of production" was reinforced by its context; that "area" called for "delimitation of territory in relation to the complicated economic factors that operate between agricultural labor conditions and the labor market of enterprises concerned with agricultural commodities and more or less near their production."

While the court thought the critical phrase most apt, it was certain that in view of the variety of agricultural and industrial conditions throughout the country, the bounds of the area could not be defined by Congress or left to the "inevitable diversities of litigation"; that the function of "boundary making" was therefore left to the experienced and informed judgment of the Administrator with "appropriate discretion to assess all factors relevant to the subject matter." But, the court did not think that discretion to weigh and synthesize the complicated economic factors that operate between agricultural and industrial labor authorized the Administrator to discriminate between the smaller and bigger establishments in determining the area of production. So the court invalidated that part of the Administrator's definition which made the number of employees in an establishment a criterion for statutory exemption.

■ From the Addison case, we are clear that "area of production" cannot be measured or delineated by the mere fact of production alone. If the task had been deemed that simple, Congress could have easily provided its own definition without resort to administrative implementation. On the contrary, it is evident that Congress intended to exempt some, but not all, of the employees engaged in the enumerated industries, and that the exemptions must be determined by drawing geographic lines in order to differentiate between that which is predominantly. rural in its economic sense, and that which is essentially industrial. It is also clear beyond doubt that the function of drawing these geographic lines is committed to the peculiar competence of the Administrator, not the courts.

In the resolution of this problem, the Administrator may weigh and synthesize all of the economic factors which enter into the equation between rural and industrial labor conditions. The narrow scope of judicial inquiry is whether the definitive regulation is based upon factors which Congress deems irrelevant or inappropriate.

According to the statement of the Administrator, tests based on distance and population were the basis of all but one of the definitions proposed for discussion at the hearings, pursuant to which the definition was finally adopted. In his statement of considerations, the Administrator pointed out that the representative of the cotton compressors opposed the use of a mileage criterion because many compress operators received their cotton from very great distances and should therefore be entitled to the exemption, even if it received cotton from a foreign country. But the Administrator went on to state that an analysis of the available data indicated quite clearly that the longest haul of agricultural commodities normally occurs when the commodity is moved to an establishment which has not been located principally to serve the nearby farms, but for reasons involving nearness to terminal facilities, markets, labor supply or other such considerations. The Administrator also observed that the distances from which establishments receive their commodities reflect to varying degrees the influence of significant economic factors, many of which are pertinent to the complex task of determining the kinds of establishments that should or should not be exempt from the minimum wage or overtime provisions of the Act. For that reason, distances from which the establishments draw their sources of supply become a major factor in the definitive process. The selection of appropriate distances for different commodities was accomplished by carefully weighing and synthesizing a large variety of complicated factors, all of which are set out in the Administrator's findings.

■ While the number of employees of an establishment has been excluded from the choice of economic factors available to the Administrator, we think the dis

stance from which enterprises obtain commodities on which they perform operations enumerated in the statute is distinctly relevant to the definition. That test was one of the basic criteria for the definition in the Addison case, and the court, impliedly at least, sanctioned its relevancy as a permissible economic factor.

The Supreme Court had no occasion to consider the so-called population test in the Addison case, and it is attacked here as being wholly unrealistic and unreasonable. It is pointed out that over eighty-one per cent of all compress-warehouse plants are located in towns having 2500 or greater population. And, it is said that all such plants are essentially located in larger centers in order to properly serve their purposes; and that to eliminate plants thus located is to exclude all or most of them from the exemption.

The 2500-population test was retained in the definitions proposed for discussion at the hearings, because, in the judgment of the Administrator, it came closer to accomplishing the objective for which it was intended than any other known test, and because it was generally considered a dividing line between urban and rural communities. There were many objections leveled against the population test, but no better criterion for accomplishing the objective of distinguishing establishments subject to "urban-industrial" conditions from those under the influence of "rural-agricultural" conditions was developed at the hearings. Independent investigation by the staff of the Wage and Hour Division as well as consultation with experts of the Department of Agriculture and other Government bureaus, failed to develop any administratively feasible substitute for population as a test of urbanization and industrialization. From an analysis of available data, the Administrator recognized that the size of a town is not a perfect criterion of its urban or industrial character, but it was adopted as the best available test, and leads to results generally accurate. Discrimination between plants, depending upon the population of cities and towns where located, was recognized, but as the Administrator points out, discrimination is inherent in any statute which exempts some

but not all employees in plants engaged in the same industry. Only a definition which would exempt none or all of the employees would entirely avoid some discrimination. To be sure, the population test does not effect discrimination between plants in the same geographical area, as did the number of employees test condemned in the Addison case. Nor does the record support the conclusion that the definition has the practical effect of excluding all compress-warehouses from the exemption.

■ Having in mind that the primary object of the definition is to attempt to arrive at an economic balance between rural and industrial labor conditions, and also having in mind that no formula has yet been devised or suggested for the satisfactory attainment of that objective, we cannot say that population of cities and towns is not a relevant economic factor in determining whether labor conditions are predominantly rural or industrial. This is especially so in view of the admonition that the Administrator, not the court, is charged with the duty of promulgating a definition to achieve the economic purposes of the exemption. It is our conclusion that the Administrator's definitive regulation is based upon relevant economic factors, that it does bear a reasonable relationship to the purposes of the exemption, and is therefore not arbitrary and capricious.

The judgment is reversed.

PICKETT, Circuit Judge (dissenting).

29 U.S.C.A. § 213(a) (10), exempts from the provisions of the Fair Labor Standards Act "any individual employed within the area of production (as defined by the Administrator), engaged in handling, packing, storing, ginning, compressing, * * * in their raw or natural state * * * agricultural * * * commodities for market * * *." It is clear that the language of the statute grants to the Administrator the authority to fix a reasonable area of production of the products named and that the provisions of the Act do not apply to employees within that area if they are engaged in performing the work named. The Administrator, by general regulation, fixed the boundaries of the area of production of cotton and then provided that if certain

conditions existed within the boundaries of the area the exemption would not apply. Our question goes to the extent of the authority granted to the Administrator to limit the application of the exemption.

In the first regulation promulgated under the Act, the area of production was limited to products coming from a given distance from the plant. It excluded those plants located near cities or towns having a population of 2500 or more and those having more than seven employees even though within the established boundaries of the area. In Addison v. Holly Hill Fruit Products, Inc., 322 U.S. 607, 64 S.Ct. 1215, 1220, 88 L.Ed. 1488, the Supreme Court, in considering the regulation as it related to fruit, held that Congress did not intend "to allow the Administrator to discriminate between small and bigger establishments within the zone of agricultural production". It was stated that if Congress had any such intention it "wholly failed to express its purpose." The only question considered related to that portion of the regulation excluding plants having more than a given number of employees. The court specifically refrained from passing upon the validity of the provision of the regulation which excluded from the exemption plants within a stated distance from cities or towns having a population of 2500 or more.

In determining the invalidity of that part of the regulation relating to the number of employees the court, in the Addison case, stated that "Congress did not leave it to the Administrator to decide whether within geographic bounds defined by him the Act further permits discrimination between establishment and establishment based upon the number of employees." The court continued that Congress "restricted the Administrator to the drawing of geographic lines, even though he may take into account all relevant economic factors in the choice of areas open to him, the regulations which made discriminations within the area defined by applying the exemption only to plants with less than seven employees are ultra vires." From this it seems rather clear to me that the Administrator could take into consideration "all the relevant economic factors" necessary to determine the geographic lines of the area of pro-

duction and the Act granted him no other power or authority. The Administrator must restrict his acts to those which are authorized by the statute. Addison v. Holly Hill Fruit Products, Inc., supra; Social Security Board v. Nierotko, 327 U.S. 358, 369, 66 S.Ct. 637, 90 L.Ed. 718.

When reasonable geographic lines of the area of production are established, then under the plain language of the Act the exemption is effective within that area. The rationale of the Addison case seems to me to be clearly to this effect. I can see no difference between a provision of a regulation excluding plants because of the number of employees and a provision excluding plants located within or near a city or town having a population of 2500 or more if it is within the geographic lines established, and there is no sound reason for any distinction. Generally the population of a city or town has no reasonable relation to the question of whether a plant is located within an area of production. The purpose of the Act was to grant an exemption which was thought to be helpful to the farmers and horticulturists, and it was not intended that the statutory exemption should be made ineffective or completely destroyed by regulation.

I would affirm the judgment.