Per Curiam.

Although the court has been deluged with hundreds of pages of briefs, the question in this case is simply one of statutory construction.
It perhaps should be emphasized that this court is not permitted to concern itself with the question whether supplemental unemployment benefits should be sanctioned by the law of this state. That, of course, is not a judicial problem but one of legislative policy for determination by the General Assembly or by constitutional amendment. And, as has been said repeatedly in matters of statutory construction, it is not a question as to what the Legislature intended to enact; rather it is *326 a question of the meaning of that which the Legislature did enact. Slingluff v. Weaver, 66 Ohio St., 621, 64 N. E., 574.
In this instance the statutes primarily involved are Sections 4141.29 and 4141.01 (M). The first reads in part as follows:
“Each eligible individual shall receive benefits as compensation for loss of remuneration due to total or involuntary partial unemployment in the amounts and subject to the conditions stipulated in Sections 4141.01 to 4141.46, inclusive, of the Revised Code.”
Section 4141.01 (M) reads:
“An individual is ‘totally unemployed’ in any week during which he performs no services and with respect to such week no remuneration is payable to him.”
Was the plaintiff employee “totally unemployed?” More specifically, did he perform no “service” and was no “remuneration” paid to him for that week? If either of these occurred, then hé definitely was not “totally unemployed” as defined by the Legislature. When he was paid supplemental unemployment benefits in the sum of $31, did he receive “remuneration?”
Section 4141.01 (H), Revised Code, contains the following definition:
“ ‘Remuneration’ means all compensation for personal services, including commissions and bonuses and the cash value of all compensation in any medium other than cash.”
That the plaintiff employee received remuneration for personal services can not well be denied when it is remembered that hourly work for hourly pay was by no means the sole feature of his employment contract. At no time during that week did he lose his status as an available employee. He retained his seniority; he retained his pension rights; he retained his right to severance pay; he performed the required service of reporting to his employer; and he was required to register and report for state compensation.
This is consistent with the following decision in the case of Social Security Board v. Nierotko, 327 U. S., 358, 90 L. Ed., 718, 66 S. Ct., 637, 162 A. L. R., 1445:
‘ ‘ Since Nierotko remained an employee under the definition *327 of the labor act, although his employer had attempted to terminate the relationship, he had ‘employment’ under that act and we need consider further only whether under the Social Security Act its definition of employment, as ‘any service * # * performed * * * by an employee for his employer,’ covers what Nierotko did for the Ford Motor Company. The petitioner urges that Nierotko did not perform any service. It points out that Congress in considering the Social Security Act thought of benefits as related to ‘wages earned’ for ‘work done.’ We are unable, however, to follow the Social Security Board in such a limited circumscription of the word ‘service.’ The very words ‘any service * * * performed * * * for his employer,’ with the purpose of the Social Security Act in mind, import breadth of coverage. They admonish us against holding that ‘service’ can be only productive activity. We think that ‘service’ as used by Congress in this definitive phrase means not only work actually done but the entire employer-employee relationship for which compensation is paid to the employee by the employer.”
It is urged that since in the instant case the supplemental unemployment benefit payment was made by a trustee and no service was performed for the trustee, such payment could not have been remuneration. However, this device in no way alters the fact that the payments are made for services rendered to the employer, and it is the employer who, in the first instance, considers and allows or disallows the claims. The trustee simply pays the claims as instructed.
The plaintiff employee also questions the authority of the administrator to require repayment of the $29 previously mentioned. This contention is untenable since the provisions of Section 4141.35, Revised Code, expressly authorize this to be done either by requiring repayment in cash or ordering that it be withheld from any future benefits.
A further contention of the plaintiff is that supplementation of unemployment benefits is authorized by Section 4141.36, Revised Code, reading as follows:
“No agreement by an employee to pay any portion of the contribution or other payment required to be made by his employer under Sections 4141.01 to 4141.46, inclusive, of the Revised Code, is valid. No employer shall make a deduction for *328 such purposes from the remuneration or salary of any individual in his employ. Such sections do not affect the validity of voluntary arrangements by which employees individually or collectively agree to make contributions for the purpose of securing benefits in addition to those provided by Sections 4141,01 to 4141.46, inclusive, of the Revised Code.”
However, a study of the statute discloses that clearly its purpose is to prevent an employer from evading the expense of unemployment compensation by shifting it to his employees, and that the last sentence thereof as quoted above clearly refers to voluntary arrangements by and between employees and not to the type of supplemental benefit plan ^involved herein.
These views as to the substantive questions render it unnecessary to consider the procedural questions presented in companion ease No. 35634.
Hence, in each case the judgment of the Court of Appeals is reversed, and a final judgment is hereby entered for the defendant appellants. If such a plan of supplemental unemployment benefits is to be approved in this state, that approval should not be left to mere inference but should be placed on the sound basis of definite statutory or constitutional amendment.

Judgments reversed.

Wéygandt, C. J., Stewart, Matthias, Bell and Herbert, JJ., concur.
Zimmerman and Taet, JJ., dissent.