**Joe ESPINOSA, Appellant,**

v.

**BOARD OF TRUSTEES OF THE FIRE RETIREMENT SYSTEM OF the CITY OF COUNCIL BLUFFS, Iowa, Appellee.**

No. 90–348.

Supreme Court of Iowa.

March 20, 1991.

MacDonald Smith, of Smith & Smith, Sioux City, for appellant.

Richard Wade, City Atty., Council Bluffs, for appellee.

Considered by HARRIS, P.J., and SCHULTZ, LAVORATO, NEUMAN, and ANDREASEN, JJ.

ANDREASEN, Justice.

This appeal requires us to interpret Iowa Code chapter 411 (1987). Specifically, we are called upon to determine whether a lump-sum payment for back pay should be included as part of a fire fighter's "average final compensation" in calculating the fire fighter's retirement benefits.

I.  *Background.*

Joe Espinosa was a fire fighter for the city of Council Bluffs, Iowa (city). In February 1986, the city paid Espinosa $21,-835.40 in back wages and interest. This payment was part of a stipulated settlement of a dispute between Espinosa and the city over the city's failure to promote Espinosa from captain to assistant fire chief. The payment represented the difference between what Espinosa had been paid

and what he would have been paid if he had been promoted to assistant fire chief on March 12, 1983.

Thereafter, Espinosa applied for determination of his pension benefits upon retirement pursuant to Iowa Code chapter 411. Chapter 411 deals with retirement systems for police officers and fire fighters who are referred to collectively in the chapter as "members." Iowa Code § 411.1(4). Espinosa sought a service retirement allowance as provided in Iowa Code subsection 411.-6(1). A service retirement allowance consists of a pension equal to one-half of the member's average final compensation. Iowa Code § 411.6(2). Average final compensation is defined as "the average earnable compensation of the member during the three years of service the member earned the member's highest salary as a . . . fire fighter." Iowa Code § 411.1(13). Earnable compensation is the:

> regular compensation which a member would earn during one year on the basis of the stated compensation for the member's rank or position including compensation for longevity and holidays and excluding any amount received for overtime compensation or other special additional compensation, meal and travel expenses, and uniform allowances and excluding any amount received upon termination or retirement in payment for accumulated sick leave or vacation.

Iowa Code § 411.1(11).

The board of fire trustees (board) calculated Espinosa's benefits based on the salary of an assistant fire chief for Espinosa's last three years with the department, the three years in which he was earning his highest salary. He contends, however, that for 1986, one of the three years, the board should have included the lump-sum payment of $16,643.97 he received for back wages as part of his income in determining his average final compensation. The board refused to include the back pay in its computations.

On a writ of certiorari, the district court upheld the board's decision, holding that the payment was not earned during the

year in which it was paid. Accordingly, the court denied the writ.

## II. *Statutory Analysis.*

■ This controversy revolves around subsection 411.1(13), "Average Final Compensation" and 411.1(11), " 'Earnable Compensation.'" As mentioned above, the average final compensation is "the average *earnable compensation* of *the member* during the three years of service the member earned the member's highest salary." Iowa Code § 411.1(13) (emphasis added). "The member" in this case, of course, is Espinosa.

Subsection 411.1(11), which defines "earnable compensation," does not refer to "the member" as does subsection 411.1(13). Rather it refers to the "regular compensation which *a member* would earn during one year on the basis of the stated compensation for the member's stated rank or position." Iowa Code § 411.1(11) (emphasis added). This is a clear indication that "earnable compensation" is to be determined generally, according to the salary for a particular rank, not according to the specific retiree's actual income for any given year. The $16,643.97 lump-sum payment for back wages was not part of the "regular compensation" received by an assistant fire chief in 1986. Therefore, it was not a part of Espinosa's "earnable compensation."

Espinosa relies on *Golinvaux v. City of Dubuque*, 439 N.W.2d 196 (Iowa 1989), to support the proposition that since lump-sum payments for back pay are not specifically exempted from the definition of earnable compensation, such payments must be included. In *Golinvaux*, we said of section 411.1(11), "we infer from the statute's lengthy list of exclusions a legislative intent to exclude only those benefits specifically named." *Id.* at 198. In that case, however, we also stressed the difference between elements of pay that constitute a " 'normal wage' " and those which do not. *Id.* at 197. The lump-sum payment involved in this case is clearly not part of the regular compensation a member would earn in a year at the rank of assistant fire chief. The fact that Espinosa received a

lump-sum payment in 1986 is irrelevant. Because the one-time lump-sum payment for back pay is so clearly outside the definition of "regular compensation," there is no need to specifically exempt it.

### III. *Allocation of Back Pay.*

 Even if the lump-sum payment were designated as regular compensation, it would still not be part of Espinosa's earnable compensation because it was not earned in 1986. In his brief, Espinosa himself refers to the payment as being for back wages. We reject Espinosa's claim that "in 1986, Espinosa finally earned the back pay sums, when he and the City agreed to his entitlement to them." Espinosa earned the back wages from 1983 to 1986 while working as a fire department captain when, as determined by the parties, he should have held the rank of assistant fire chief.

The United States Supreme Court in *Social Security Bd. v. Nierotko*, 327 U.S. 358, 370, 66 S.Ct. 637, 644, 90 L.Ed. 718 (1946), held that back pay should be allocated to the periods when the regular wages were not paid as usual. While the Supreme Court was dealing with the issue in a different context, we believe the same principles should apply here; the back pay should be allocated to the years in which it was earned.

We hold that the trial court was correct in holding the board lawfully refused to include Espinosa's back pay award in computing his service retirement allowance.

AFFIRMED.