**PEAVEY COMPANY, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**PEAVEY COMPANY, Respondent.**

Nos. 80–2092, 80–2128.

United States Court of Appeals, Seventh Circuit.

Argued April 2, 1981.

Decided May 6, 1981.

Harold A. Thomas Jr., St. Louis, Mo., for Peavey Co.

Michael Messitte, Elliott Moore, N.L.R.B., Washington, D. C., for N.L.R.B.

Before SWYGERT, SPRECHER and BAUER, Circuit Judges.

BAUER, Circuit Judge.

Petitioner, Peavey Company, seeks review of an order of the National Labor Relations Board ("NLRB"). The NLRB cross-petitions for enforcement. We grant enforcement in part and deny it in part.

## I

The Board found that Peavey violated section 8(a)(3) of the National Labor Relations Act, 29 U.S.C. § 158(a)(3), when it discharged Mellinda Snider. The Administrative Law Judge ("ALJ") found that Snider's discharge "was motivated at least in substantial part by her protected activities." While affirming the ALJ's conclusions of law, the Board labeled Peavey's reasons for the discharge a "pretext." The Board then found that "Snider was discharged solely because of her concerted and union activities." Peavey claims that legitimate business reasons justified Snider's discharge.

■ Since its decision in this case, the National Labor Relations Board issued its *Wright Line* decision, 251 N.L.R.B. No. 150, 105 L.R.R.M. 1169 (1980). *Wright Line* set forth definitive rules for resolving cases in which a "dual motive" discharge is alleged.

The Board expressly rejected the "in part" test relied upon by the ALJ here. Instead, it applied the Supreme Court's test in *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), to dual motive discharge cases. Under the new test, the General Counsel must first make a *prima facie* showing that the employee's protected conduct was a motivating factor in the employer's decision to discharge the employee. Once this is established, the burden shifts to the employer to demonstrate that he would have discharged the employee even in the absence of the protected conduct. *Wright Line*, 105 L.R.R.M. at 1175. The Board ruled that the *Mt. Healthy* test aimed to determine the causal relationship between the employee's protected activities and the employer's action. Once found, a causal relationship justifies liability under section 8(a)(3), without any quantitative label such as "in part" or "dominant motive." *Id.*

This is the first "dual motive" case to reach us for decision since *Wright Line*.[1] At least one other circuit has adopted the *Mt. Healthy* approach. *See Statler Industries, Inc. v. N.L.R.B.*, 644 F.2d 902 (1st Cir. 1981); *N.L.R.B. v. Eastern Smelting & Refining Corp.*, 598 F.2d 666 (1st Cir. 1979). We have reviewed the decisions and have decided to follow the *Mt. Healthy/Wright Line* test in "dual motive" cases in this Circuit.

■ Our review of the record as a whole convinces us that Peavey Company met its burden under the *Wright Line* decision. The evidence showed that, although a good typist, Snider was a sloppy worker and had a history of disputes with her supervisors. Peavey disciplined her in writing and advised her of possible discharge unless her work record and attitude improved. A few days before her discharge, she refused to insert notices of new pay scales into paycheck envelopes she was told to prepare. Snider's discharge was ultimately prompted by her refusal to retype some poorly-typed letters.

---

1. A recent decision, *Sullair P.T.V., Inc. v. N.L.R.B.*, 641 F.2d 500, 504 (7th Cir. 1981), cited but did not rely on *Mt. Healthy* and *Wright Line*, because there was no evidence of any illegal motive for the discharge.

The Board backed away from the ALJ's determination that Snider's discharge was motivated "in part" by her union activity. In labeling Peavey's reasons as "pretextual," however, the Board relied on the same rationale as did the ALJ. It agreed that Peavey had "tolerated Snider's poor job performance for over eighteen months" until she began concerted activities. The Board also relied on Peavey's demonstrated "animus" towards the union and the timing of Snider's discharge.

Peavey's reasons here cannot be labeled pretextual. As *Wright Line* held, a pretext can be found to exist when "the purported rule or circumstances advanced by the employer did not exist, or was not, in fact, relied upon [sic]." 105 L.R.R.M. at 1170. Here, however, it is undisputed that Snider had been disciplined, for cause, prior to her contact with the union. Snider testified, in fact, that she went to the union as a result of her discipline. Her prior discipline also undermines the Board's claim that Peavey had tolerated Snider's poor performance without complaint for eighteen months. Unlike in *St. Luke's Memorial Hospital, Inc. v. N.L.R.B.*, 623 F.2d 1173, 1179 (7th Cir. 1980), there were independent acts of misconduct at the time of Snider's discharge which justified Peavey's action. Moreover, an employer's silence does not extinguish its right to discipline an employee whose conduct continues to worsen. *See N.L.R.B. v. Wilson Freight Co.*, 604 F.2d 712, 723 (1st Cir. 1979), *cert. denied*, 445 U.S. 962, 100 S.Ct. 1277, 64 L.Ed.2d 238 (1980).

Once Peavey's reasons for discharge are stripped of the label "pretext," it is apparent that Peavey met its burden under the *Wright Line* decision. Even though Snider engaged in some protected activity, Peavey showed that she would have been discharged even in the absence of the protected conduct. *See Pelton Casteel, Inc. v. N.L.R.B.*, 627 F.2d 23, 30 (7th Cir. 1980). The substantial evidence on the record as a whole does not support the Board's finding of an 8(a)(3) violation. We therefore deny enforcement of that portion of the Board's order calling for reinstatement of and back pay for Snider.

## II

The Board also found five violations of section 8(a)(1) of the National Labor Relations Act. 29 U.S.C. § 158(a)(1). The Board found that Peavey violated the Act when (1) its General Manager told Snider that she was a confidential employee and thus not entitled to participate in union activities; (2) Supervisor Sandy Noe followed employees and eavesdropped on their conversations; (3) it announced, after the union began organizing, that employees could see their personnel files; (4) its General Manager told an employee that persons who joined the union would be considered disloyal, thus decreasing their promotional chances; (5) its General Manager promised the employees at a meeting that "he was going to see that things" got better.

After a review of the record as a whole, we conclude that substantial evidence supports the Board's finding of section 8(a)(1) violations. Peavey's contentions to the contrary are without merit. Accordingly, we enforce the rest of the Board's order.

Enforced in Part, Enforcement Denied in Part.