## NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

## TRANSPORTATION MANAGEMENT CORP., Respondent.

### No. 81–1537.

United States Court of Appeals, First Circuit.

Argued Jan. 8, 1982.

Decided April 1, 1982.

Carol A. De Deo, Atty., Washington, D. C., with whom William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Acting Associate Gen. Counsel, and Elliott Moore, Deputy Associate Gen. Counsel, Washington, D. C., were on brief, for petitioner.

C. Fred Welensky, Boston, Mass., for respondent.

Before COFFIN, Chief Judge, TIMBERS,* Senior Circuit Judge, and BREYER, Circuit Judge.

PER CURIAM.

█ The National Labor Relations Board seeks enforcement against the Transportation Management Corporation (the "Company") of an order based upon Board findings that the Company violated § 8(a)(1)[1] and § 8(a)(3)[2] of the National Labor Relations Act. Several of the findings of § 8(a)(1) violations are adequately supported by the record. The record reveals, for example, that Paterson, a supervisor, spoke to West, an employee and the brother-in-law of Santillo, another employee who was a union activist. In the conversation Paterson referred to Santillo's union activity, suggested that he (Paterson) was taking it "personal," noted that he had previously given Santillo favors (such as letting him park his car in Paterson's yard and giving him time off in the summer to work on another job), and threatened that in the future, "I'll remember it." Paterson also told a different employee, Baer, that he would "get even" with Santillo. While Paterson's motives were the subject of conflicting testimony, there is ample ground for a fact finder to conclude that Paterson's threats were union-oriented, gave an impression of surveillance, *see NLRB v. Rich's of Plymouth, Inc.,* 578 F.2d 880 (1st Cir. 1978), and constituted unlawful coercion. *NLRB v. A. Lasaponara & Sons, Inc.,* 541 F.2d 992, 996–97 (2d Cir. 1976), *cert. denied,* 430 U.S. 914, 97 S.Ct. 1325, 51 L.Ed.2d 592 (1977).

█ The Board also found the Company's discharge of Santillo unlawful under both §§ 8(a)(1) and 8(a)(3) of the Act. In making this finding, however, the Board did not conclude that "upon the preponderance of the testimony taken," it was "of the opinion" that the Company had engaged in an unfair labor practice. National Labor Relations Act § 10(c), 29 U.S.C. § 160(c). Rather, it based its finding of a violation upon a conclusion that the Company "failed to meet its burden of *overcoming* the General Counsel's *prima facie* case by establishing by competent evidence that Santillo would have been discharged even absent his union activities." (Emphasis added.) While this court has upheld the Board's practice of imposing upon the Company the burden of *neutralizing* the implication of sufficient anti-union motive arising from the General Counsel's *prima facie* case, *Statler Industries, Inc. v. NLRB,* 644 F.2d 902 (1st Cir. 1981); *NLRB v. Amber Delivery Service, Inc.,* 651 F.2d 57 (1st Cir. 1981); *NLRB v. Cable Vision,* 660 F.2d 1 (1st Cir. 1981), it has rejected both explicitly, *NLRB v. Wright Line,* 662 F.2d 899 (1st Cir. 1981), and implicitly, *NLRB v. Amber Delivery Service, Inc.,* 651 F.2d at 69; *NLRB v. Cable Vision,* 660 F.2d at 8; *NLRB v. Eastern Smelting & Refining Corp.,* 598 F.2d 666, 671 n.12 (1st Cir. 1979),[3] any effort by the Board to impose a *greater* burden than this upon the Company, as outside the Board's statutory authority. We therefore remand this case to the Board for reconsideration under the standard of *NLRB v. Wright Line, supra. SEC v. Chenery Corp.,* 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1943). Since the Board's order is based in

---

* Of the Second Circuit, sitting by designation.

1. Section 8(a)(1) provides: "It shall be an unfair labor practice for an employer—(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 7 ...." 29 U.S.C. § 158(a)(1) (1976). Section 7 provides in pertinent part: "Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection ...." *Id.* § 157.

2. Section 8(a)(3) provides in pertinent part: "It shall be an unfair labor practice for an employer—(3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization ...." 29 U.S.C. § 158(a)(3) (1976).

3. While *Statler Industries* did appear to approve the Board's *Wright Line* test, which imposes such a burden, it did not focus upon this particular subsidiary issue.

large part upon Santillo's discharge, we do not believe that partial enforcement at this time is appropriate.

*So ordered.*

BREYER, Circuit Judge (concurring).

The Board, in oral argument in this case and in briefs in subsequent cases, has indicated an unwillingness to follow this court's decision in *NLRB v. Wright Line*, 662 F.2d 899 (1st Cir. 1981), and has asked for reconsideration. While I join the court's opinion here, I also concur separately to state my reasons for rejecting the Board's request.

First, I think the Board may overestimate the extent of the difference between its formulation and our own. Both Board and court agree that in a "dual motive" discharge case "the initial inquiry is whether the Board has made a *prima facie* showing that a 'significant improper motivation' underlay the Company's action." *NLRB v. Cable Vision*, 660 F.2d 1, 8 (1st Cir. 1981); *NLRB v. Amber Delivery Service*, 651 F.2d 57, 69 (1st Cir. 1981); *Statler Industries, Inc. v. NLRB*, 644 F.2d 902, 905 (1st Cir. 1981); *NLRB v. Eastern Smelting & Refining Corp.*, 598 F.2d 666, 671 (1st Cir. 1979). In making this *prima facie* case, the Board must establish the "requisite knowledge by the Company of union activity." The "bad reason may [then] be shown by independent evidence or by the circumstances of the discharge itself." *NLRB v. Eastern Smelting & Refining Corp.*, 598 F.2d at 670. Both Board and court also agree that thereafter "the burden . . . shifts to the Company to 'prove that it had a good reason, sufficient in itself, to produce' the [discharge] . . . *Statler Industries, Inc. v. NLRB*, 644 F.2d at 905, quoting *NLRB v. Eastern Smelting & Refining Corp.*, 598 F.2d at 671." *NLRB v. Cable Vision*, 660 F.2d at 8. But, the Board and court apparently do not agree about who should win if, after both sides have submitted their evidence, the evidence is in "equipoise."

We made clear both in *Cable Vision* and in *Amber Delivery* that in such a situation the employer must prevail, for we wrote, "This shift [of the burden of proof to the Company] does not impose an overall burden upon the Company of proving itself 'innocent' of violating the statute. Rather, it must simply come forward with enough evidence to convince the trier of fact that, under the circumstances, there is no longer a preponderance of evidence establishing a violation." *NLRB v. Cable Vision*, 660 F.2d at 8. This language generalized the court's statement in *Eastern Smelting* that when the employer presents evidence of a good and sufficient motive for the discharge, the Board "may not reject the employer's proof, absent a reasonable basis." *NLRB v. Eastern Smelting & Refining Corp.*, 598 F.2d at 671 n.12. In turn, *Cable Vision* and *Amber Delivery* elaborated this point, and finally the point was analyzed still more carefully in *Wright Line*. Yet there is nothing in *Wright Line* that reflected any departure from prior court decisions.

While the *Wright Line* formulation does, of course, mean that the employer wins in a case where the record cannot be fairly said to make out a violation by a preponderance of the evidence, this is surely what one would expect. *See Edison Co. v. Labor Board*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938). The burden of proof formulation does not itself add to, or detract from, the requirement of substantial evidence. *Cf. Miranda v. HEW*, 514 F.2d 996, 998 (1st Cir. 1975). Thus, I do not see the court's *Wright Line* formulation as being of great practical significance. *Wright Line*, for example, does not tell the Board what it can, or cannot, conclude from silences in the record; that is a matter governed by the facts of a particular case, experience, and common sense.[1] Rather, *Wright Line*

---

1. *E.g.*, if I see water pouring down outside the window, I can reasonably infer that it is raining, although my inference in part depends upon the absence of evidence that there are small boys with a garden hose standing on the roof. Add to the record, however, the facts that there are such small boys and the sun is shining, and my inference of rain becomes unreasonable. If I try to support it by pointing to an *absence* of evidence in the record that the hose was turned on, I am still acting unreasonably. Because of the *facts* involved, a conclu-

simply tells the Board that after the evidence is in, it must itself make a judgment about whether the evidence *overall* does or does not support a finding of violation; it cannot avoid this issue by retreating to the language of "burdens of proof."

Second, as the court pointed out in *Wright Line*, the relevant statutes compel the result we reached. Section 10(c) of the National Labor Relations Act, 29 U.S.C. § 160(c), provides that the Board must dismiss a complaint when "upon the preponderance of the testimony taken" the Board "shall not be of the opinion" that an unfair labor practice was committed. Section 7(c) of the Administrative Procedure Act, 5 U.S.C. § 556, states that "Except as otherwise provided by statute, the proponent of [an] order has the burden of proof." And, the Board's rules themselves state that the Board's attorney has the burden of proof of violations of section 8." 29 C.F.R. § 101.-10(b). How, in the face of this language, is it possible not to hold that the overall burden of proving a violation remains with the Board?

The Eighth Circuit has recently written that there is a "reasonable basis in law" for the Board's *Wright Line* burden shifting, apparently disagreeing as well with the narrow "overall burden" question at issue here. *NLRB v. Fixtures Mfg. Corp.*, 669 F.2d 547 at 550–551 n.4 (8th Cir. 1982)[2]. The Eighth Circuit rests its opinion, however, upon its belief that the "overall burden" question is one as to which a court should defer to agency views. I doubt that this is so: Whether the Board can impose such an overall burden on the employer is a pure question of law. It involves a major and important section of the authorizing statute; it is not "interstitial;" and the language of the statute as well as its legis-

lative history seem clear. *Packard Motor Car Co. v. NLRB*, 330 U.S. 485, 491–93, 67 S.Ct. 789, 793–94, 91 L.Ed. 1040 (1947); *Constance v. Secretary of Health and Human Services*, 672 F.2d 990, 995 (1st Cir. 1982). The fact that the agency might find such burden shifting administratively useful would be significant had Congress intended to delegate such authority to the agency, but that is not the case here. *Social Security Board v. Nierotko*, 327 U.S. 358, 368–69, 66 S.Ct. 637, 642–43, 90 L.Ed. 718 (1946). Here the issue is one of statutory language and congressional intent. These indicate quite clearly that the Board, not the employer, must bear the overall burden of showing a violation of the Act.

Finally, it is worth recalling that one major purpose underlying court review of administrative agency decisions is that of keeping agency action within statutory bounds laid down by Congress—including those statutory qualifications that limit the agency's more important basic mission. Stewart, *The Reformation of American Administrative Law*, 88 Harv.L.Rev. 1667 (1975). To do so, Congress has entrusted courts with primary responsibility for determining questions of law related to the agency's mission. Administrative Procedure Act § 10(e), 5 U.S.C. § 706. And, to prevent the agencies from extending that mission or escaping statutory limitations through one-sided fact-finding, Congress has required the courts to make certain that factual findings are supported by "substantial evidence" on the basis of the "whole record." *Id.* See *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487–92, 71 S.Ct. 456, 463–67, 95 L.Ed. 456 (1951). This historic division of tasks between court and agency,

---

sion based in part upon the record's silence is reasonable in the first instance but not in the second. Most silences in an administrative record are of this factual sort; burden of proof rules only occasionally affect the conclusions that might be drawn from them.

2. There are decisions in other circuits either accepting—*NLRB v. Robin American Corp.*, 654 F.2d 1022 (5th Cir. 1981); *NLRB v. Consolidated Freightways Corp.*, 651 F.2d 436 (6th

Cir. 1981); *Charge Card Ass'n v. NLRB*, 653 F.2d 272 (6th Cir. 1981); *Peavey Co. v. NLRB*, 648 F.2d 460 (7th Cir. 1981); *NLRB v. Nevis Industries, Inc.*, 647 F.2d 905 (9th Cir. 1981)—or rejecting—*TRW, Inc. v. NLRB*, 654 F.2d 307 (5th Cir. 1981)—the Board's *Wright Line* test. But with the exception of *Fixtures*, and possibly *Nevis*, none has considered explicitly the point here at issue.

and the major purpose underlying it, suggests why it is desirable to require the Board to certify that, after hearing both sides, it still believes the evidence in the record by a preponderance shows a violation of the statute: Doing so forces the agency to focus directly on what Congress told it to do; it prevents the agency from retreating behind the opaque language of "burden of proof;" and it simplifies the work of a reviewing court, which would otherwise be uncertain as to when it could, and when it could not, properly overturn an agency decision. (Compare the difficulty of deciding whether there is substantial evidence on the record as a whole that the employer has not *proved* that the bad motive did *not* move him.)

In sum, this court's *Wright Line* opinion imposes little practical burden on the Board; it is required by statute; and it is, in terms of general agency/court relations, simplifying. I therefore think this court is correct in deciding not to modify it.