NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

TOWNSEND AND BOTTUM,
INC., Respondent.

No. 82–1055.

United States Court of Appeals,
Sixth Circuit.

Argued June 14, 1983.

Decided Dec. 2, 1983.

Rehearing and Rehearing En Banc
Denied Jan. 12, 1984.

Elliott Moore, Deputy Associate Gen. Counsel, N.L.R.B., Washington, D.C., Paul Spielberg, argued, for petitioner.

Bruce W. Martin, Craig A. Miller, Miller, Johnson, Snell & Cummiske, Kalamazoo, Mich., Barry Smith, argued, Paul A. Williams, Reamon, Williams, Klukowski, Wood & Drew, Grand Rapids, Mich., for respondent.

Steven C. Kahn, Pepper, Hamilton & Scheetz, Washington, D.C., for amicus Bechtel Power Corp.

Edward Freeberg, Gemrich, Moser, Dombrowski, Bowser & Fette, Kalamazoo, Mich., for amicus Michigan Chapter of Associated General Contractors.

Before KENNEDY, Circuit Judge, PECK, Senior Circuit Judge, and ALLEN, Chief District Judge.*

JOHN W. PECK, Senior Circuit Judge.

The National Labor Relations Board (Board) petitions this court seeking enforcement of its order holding Townsend and Bottum, Inc. (T & B) in violation of §§ 8(a)(1) & (3) of the National Labor Relations Act (NLRA), 29 U.S.C. §§ 158(a)(1) & (3). The Board found that T & B had discriminated in favor of members of Local 70 of the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada, AFL–CIO (Local 70) by laying off other workers earlier and at a higher rate than Local 70 members during the final stages of a construction project. After careful consideration of the entire record in this case we affirm the Board's decision and enforce its order.

T & B, a Michigan corporation with its principal place of business in Ann Arbor, Michigan, is engaged in the construction business at various locations around the state. During 1979 T & B became the general contractor at a West Olive, Michigan project constructing a power plant for the Consumers Power Company. Employees at the project consisted of members of

* The Honorable Charles M. Allen, Chief Judge, United States District Court for the Western District of Kentucky, sitting by designation.

Local 70, as well as members of various sister locals in the United States and Canada. These employees were supplemented by a number of nonunion workers. By the end of 1979 there were approximately 387 employees at the West Olive, Michigan project, 80 of whom were members of Local 70.

Beginning in December, 1979, as the project neared completion, T & B began laying off workers. Sometime thereafter in December, 1979 or January, 1980, Robert Knowles, an employee at the work site, asked Mike Duffy, a foreman for T & B, about the order of layoffs. Duffy replied that nonunion subjourneymen [1] would be laid off first, then Canadians, and finally permit hands.

Otis Fahl, who had succeeded Chester Krupiczewicz as Local 70's business manager on January 10, 1980, indicated in a conversation with T & B officials that he intended to honor previous arrangements made between his predecessor and the company. Shortly before his death, Krupiczewicz had demanded that Robert Shilander, Project Superintendent for T & B, give Local 70 members a hard look before he laid them off.

Thereafter, between January 18, 1980 and February 15, 1980, T & B laid off approximately 153 workers, only 3 of whom were members of Local 70.[2] Robert Ferris, main steward for Local 70 during the early stages of the West Olive, Michigan project, and Shilander estimated by about the end of February or March all of the nonunion employees working on the job site had been laid off. By May, 1980, all but a handful of those working at the job site were Local 70 members.

Several nonmembers of Local 70, including Paul Vander Ploeg, filed unfair labor practice charges alleging that T & B's selections for layoffs discriminated in favor of Local 70 members in violation of §§ 8(a)(1) & (3) of the NLRA. They also alleged that Local 70, by failing to register or refer employees, pursuant to a hiring hall agreement, had discriminated against them in violation of §§ 8(b)(1) & (2) of the NLRA, 29 U.S.C. §§ 158(b)(1) & (2).[3]

At the hearing, Shilander testified that he had made the layoff selections with the assistance of recommendations of T & B's general foreman and other foremen and supervisors at the project. The foremen considered an employee's experience, whether his job assignment was completed, and whether his special skill was still needed at the construction site. Shilander conceded, however, that he had made no individual evaluations, but had only checked layoff recommendations to avoid overall glaring inequities. The company kept no records of reasons for individual layoffs and there were no written criteria or standards for layoffs. None of the foremen or supervisors involved in the alleged determinations of layoffs testified at the hearing. After the General Counsel completed his case, T & B elected to call no witnesses, relying on the pleadings and its cross-examination of adverse witnesses.[4]

Applying the test developed in *Wright Line, A Division of Wright Line, Inc.,* 251 N.L.R.B. 1083 (1980), *enforced,* 662 F.2d 899 (1st Cir.1981), *cert. denied,* 455 U.S. 989, 102 S.Ct. 1612, 71 L.Ed.2d 848

---

1. According to Robert Ferris, subjourneymen earn 60% of the journeyman's rate of pay and are not members of Local 70.

2. Included in the layoffs were some 90 Canadians whose work visas expired in February, 1980. While their layoffs are not, of course, at issue in this case, they were noted in the ALJ's opinion. Included in this total were three individuals who had inadvertently been counted twice, making the actual total number of layoffs 150 during this period.

3. The Board subsequently ruled in favor of complainants on this claim. Local 70 did not appeal the decision.

4. In its answer and exceptions filed with the Board, T & B contended that it had selected layoffs by requesting volunteers. It further argued that Shilander's testimony showed that reasonable criteria had been applied for determining layoffs. T & B finally alleged that any pattern of favoring Local 70 members perceived by the ALJ was permissible under § 8(f)(4), which permits certain preferential treatment of local employees over nonlocal employees.

(1982), the administrative law judge (ALJ) held that the General Counsel had made out a prima facie case of discrimination under § 8(a)(3). The ALJ then found that T & B had failed to satisfy its burden of proving that the alleged discriminatees would have been laid off absent their status as non-members of Local 70. The ALJ therefore held that T & B had violated §§ 8(a)(1) & (3), ordering reinstatement and back pay. The Board affirmed the decision of the ALJ in full and now petitions this court for enforcement of its order.

Before this court, T & B initially challenges the Board's use of the *Wright Line* test to find a violation of § 8(a)(3) in this case. T & B urges that the Board's finding a violation based solely on the General Counsel's prima facie showing runs counter to § 10(c) of the NLRA, 29 U.S.C. § 160(c), and to 29 C.F.R. § 101.10(b), which require the Board to prove an unfair labor practice by a preponderance of the evidence in the record.[5] We disagree.

In its *Wright Line* decision the Board promulgated a procedural test applicable in employee discharge cases under § 8(a)(3) where mixed motives were alleged for the discharge. The Board in *Wright Line* not only attempted to resolve confusion over the proper methodology for addressing such cases, primarily due to a variety of prior tests, but also sought to fairly balance the competing goals of allowing an employee to freely exercise his § 7 rights under the NLRA while also permitting an employer to discharge workers for legitimate reasons.

*Wright Line, supra* at 1088.[6] With these policies in mind, the Board assigned the General Counsel the initial burden of making a prima facie showing that a substantial or motivating factor in the discharge was pro- or antiunion animus. Once such a showing is made, the burden of proof shifts to the employer to demonstrate that the discharge would have occurred absent the protected activity. *Wright Line, supra* at 1088–89. If the employer does not satisfy his burden of proof by a preponderance of the evidence, the discriminatee prevails.

The *Wright Line* test was approved by the Supreme Court in *NLRB v. Transportation Management Corp.,* —— U.S. ——, 103 S.Ct. 2469, 76 L.Ed.2d 667 (1983).[7] In *Transportation Management,* the Board had ruled that the General Counsel made out a prima facie showing of antiunion animus. The employer had failed, however, to prove the employee would have been discharged absent his protected activity. As a result, the Board held that the employer had violated § 8(a)(3). The First Circuit refused to enforce the decision. 674 F.2d 130 (1st Cir.1982). It held that the Board's *Wright Line* test violated § 10(c) of the NLRA in two respects: first, the Board improperly had shifted the burden of proof to the employer to show it had not acted with antiunion animus; and, second, the Board had failed to find an unfair labor practice by a preponderance of the evidence since the only evidence introduced at the hearing by the General Counsel was a prima facie showing that the antiunion animus was a

---

5. Section 10(c) of the NLRA provides in pertinent part:
 If upon the preponderance of the testimony taken the Board shall be of the opinion that any person named in the complaint has engaged in or is engaging in any such unfair labor practice, then the Board shall state its findings of fact and shall issue and cause to be served on such person an order requiring such person to cease and desist from such unfair labor practice ....
 29 C.F.R. § 101.10(b) provides in pertinent part: "The Board's attorney has the burden of proof of violations of section 8 of the National Labor Relations Act ...."

6. Section 8(a)(3) of the NLRA provides in pertinent part:
 (a) It shall be an unfair labor practice for an employer—

 ...

 (3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization
 ....

7. This circuit had approved the Board's *Wright Line* test in *Republic Die & Tool Co. v. NLRB,* 680 F.2d 463 (6th Cir.1982), so that the Supreme Court's decision in *Transportation Management* on June 15, 1983, one day after oral argument in this case, did not change the law in this circuit. The parties were, however, given the opportunity to submit supplemental briefs, analyzing the impact of *Transportation Management.* The briefs became a part of the record on review.

substantial or motivating factor in the employer's decision to discharge.

In a unanimous decision the Supreme Court reversed, approving the use of the *Wright Line* test in employee discharge cases. The Board could, the Court reasoned, permissibly shift the burden of persuasion to the employer to show by a preponderance of the evidence that the alleged discriminatory discharge would have occurred notwithstanding the protected activity of the employee. The burden of proof required by the Board was, the Court continued, an affirmative defense not disallowed by § 10(c) of the NLRA.

At the same time the Court, without specifically addressing the point, affirmed the Board's finding of an unfair labor practice based solely on the General Counsel's prima facie showing of a violation. Though the ALJ did not explicitly make such a determination the Court, per Justice White, stated that the ALJ found a violation by a preponderance of the evidence. *Transportation Management, supra,* 103 S.Ct. at 2471.

Despite this language, T & B urges this court to deny enforcement simply because the ALJ in this case relied solely on the prima facie case presented by the General Counsel. We decline to do so.

Under the Board's *Wright Line* test, the General Counsel is required to show that antiunion animus was a substantial or motivating factor in the employer's decision to discharge the alleged discriminatee. This proof, standing alone, clearly meets the statutory requirement. Absent a showing by the employer of affirmative reasons for its actions, notwithstanding an employee's exercise of his lawful § 7 rights under the NLRA, the ALJ would automatically find an unfair labor practice based on the preponderance of all the evidence submitted. Use of the *Wright Line* test in this manner also has the advantage of requiring the party with the easiest and most reasonable

access to the requisite evidence to produce it at the hearing, permitting the ALJ to avoid quantitative calculations inherent in other possible procedural mechanisms. *Wright Line, supra* at 1088, 1089 n. 14.

The ALJ in this case found that the General Counsel had made a prima facie showing of discriminatory motivation by T & B, found that T & B had failed to prove the affirmative defense that the discharge would have occurred notwithstanding the employee's union status, and ruled after reviewing the entire record that a violation had occurred. We find this procedure reasonable and permissible under § 10(c).

 T & B raises several substantive arguments and challenges the sufficiency of the evidence to support the Board's finding that T & B's selections for layoffs violated § 8(a)(3). T & B asserts that the General Counsel failed to present a prima facie case of discriminatory conduct, and contends that its reasons for selecting layoffs were motivated by legitimate business concerns rather than concern for union status. Our primary function in reviewing such questions is to determine whether substantial evidence in the entire record supports the Board's decision. *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951); *NLRB v. Digital Paging System of Toledo, Inc.,* 659 F.2d 725, 726 (6th Cir.1981). On review this court should not substitute its own judgment for that of the Board absent proof that the decision was arbitrary or unreasonable, even though had the court addressed the case de novo, it might have reached a different conclusion. *Universal Camera Corp., supra; NLRB v. S.E. Nichols of Ohio, Inc.,* 704 F.2d 921, 923 (6th Cir.1983) (per curiam). With these guidelines in mind, we turn to an analysis of the record in this case.

 At the hearing the General Counsel introduced evidence, including a roster of Local 70 members,[8] payroll records kept by

---

8. T & B contends General Counsel's Exhibit 8, purported to be a roster of Local 70 members during the period applicable in this case, was not identified or verified in accordance with Rule 901 of the Federal Rules of Evidence. Since T & B failed to object at the time the evidence was introduced, however, T & B is foreclosed from arguing this point on review in this court. *See* McCormick, Handbook of the Law of Evidence, § 54 at 125 (2d ed. 1972). T & B's other arguments challenging the accuracy of various exhibits are frivolous and were adequately addressed by the ALJ.

T & B indicating which employees had received deductions covering dues payments to Local 70, and lists of recommended employees for layoffs kept by the company indicating upon which date each employee was laid off. The statistics demonstrate that the percentages of Local 70 members and of nonmembers were roughly equal during December, 1979, and early January, 1980. From January 18, 1980 to February 15, 1980, however, the pattern of layoffs drastically changed. During that period some 60 nonmembers of Local 70 were laid off while only 3 Local 70 members were discharged. At the time of the change, Knowles was told by Duffy that nonunion subjourneymen would be laid off first, then Canadians and finally permit hands. At the same time, Local 70's business manager, whose predecessor had demanded that T & B give each Local 70 member a hard look before laying him off, instructed company officials that he intended for previous arrangements made between Local 70 officials and T & B to continue. Duffy, as a foreman, knew company policy and was involved in the layoff process itself. His ordering of layoffs clearly reflected a company preference toward laying off nonmembers of Local 70 first. The statement by Fahl further illustrates that this preference was on the minds of Local 70 and T & B officials. A finder of fact reasonably could interpret these statements to mean that T & B officials, preparing to determine who would be laid off, would closely view the union status of each employee before laying him off. Given this testimony, as well as the statistics introduced, we conclude the ALJ was justified in finding that the General Counsel had presented a prima facie case that membership status was a substantial or motivating factor in T & B's layoff selections.

In contrast, T & B relies *in toto* on various asserted reasons for its selections for layoff with little or no support for them in the record. While alleging that it chose layoffs from volunteers who wished to stop working or that certain other criteria were used, T & B presented no evidence as to why each individual was laid off. While claiming that the NLRA permits an employer to grant preferences to local area workers, without regard to union status in the locality, T & B fails to present evidence showing such an arrangement was involved in the selection process. Since the reasons offered by T & B are pretextual at best, amounting only to a post hoc justification, we conclude the ALJ was justified in finding that the company failed to carry its burden of proving legitimate reasons for the selection of layoffs.

Since the General Counsel demonstrated a violation of § 8(a)(3) had occurred and T & B failed to prove its affirmative defense to the violation, we conclude the Board's decision was supported by substantial evidence in the record read as a whole. We, therefore, enforce the Board's decision in all respects.

CORNELIA G. KENNEDY, Circuit Judge, dissenting.

Neither the ALJ nor the Board ever made a finding by a preponderance of the evidence that the employer laid off a number of employees because of their non-membership in Local 70. For that reason I would deny enforcement of the Board's order and remand the case to the Board for further proceedings.

In *Transportation Management,* the Court held that in a mixed motive case the Board may require the employer to prove that, even though protected conduct motivated a discharge, the employee would have been discharged in any event because of unprotected conduct. With the exception of the Canadian workers, however, this is not a mixed motive case. With respect to the Canadians, T & B was saying they would have been laid off in any event because their visas expired. The ALJ and the Board accepted that affirmative defense and that issue is not a part of this enforcement proceeding. With respect to the remaining workers, the employer is simply denying they were laid off because they were not members of Local 70. It is not saying even if they were laid off because

they were not members of the Local, they would have been laid off anyway.

The Supreme Court recognized in *Transportation Management* that the General Counsel must prove by a preponderance of the evidence that protected conduct (here non-membership in Local 70) was a motivating factor in the discharge (here the layoff preference given Local 70 members). In four separate statements it reaffirmed that the General Counsel had to initially establish by a preponderance of the evidence that protected conduct motivated the discharge.

In the recital of the proceedings below, the Court specifically stated that:

> The administrative law judge (ALJ) determined by a preponderance of the evidence that Patterson clearly had an anti-union animus and that Santillo's discharge was motivated by a desire to discourage union activities.

103 S.Ct. 2469, 2471 (1983).

Again, it states:

> This construction of the Act—that to establish an unfair labor practice the General Counsel need show by a preponderance of the evidence only that a discharge is in any way motivated by a desire to frustrate union activity—was plainly rational and acceptable. The Board has adhered to that construction of the Act since that time.

*Id.,* 103 S.Ct. at 2473.

Should there be any question but that the finding of a violation must be by a preponderance of the evidence it is removed by the Court's statement that:

> The Court of Appeals was quite correct, and the Board does not disagree, that throughout the proceedings, the General Counsel carries the burden of proving the elements of an unfair labor practice. Section 10(c) of the Act, 29 U.S.C. § 160(c), expressly directs that violations may be adjudicated only "upon the preponderance of the testimony" taken by the Board.

*Id.,* 103 S.Ct. at 2474.

Finally, in footnote 5, the Court stated:

> The Board has not purported to shift the burden of persuasion on the question of whether the employer fired Santillo at least in part because he engaged in protected activities. The General Counsel satisfied his burden in this respect and no one disputes it.

*Id.,* 103 S.Ct. at 2473 n. 5.

Here the ALJ failed to make any finding of pro-Local 70 animus by a preponderance of the evidence. Instead he found that the General Counsel had established a *"prima facie* showing that the motivating factor" in the layoffs was the non-membership of the employees in Local 70. (App. 16) The ALJ expressly defined what he meant by *"prima facie* showing":

> Further, where motivation for discharge is at issue the General Counsel must make a *prima facie* showing sufficient to support the inference that protected activity by employees was a motivating factor in an employer's decision to discharge . . . .

(App. 14) Evidence "sufficient to support the inference" is something different from a preponderance of the evidence. The Board merely affirmed the holding of the Administrative Law Judge, so its opinion does not remedy the ALJ's defective standard.

Without a finding by a preponderance of the evidence that a motivating factor in the layoffs of employees between January 18, 1980 and February 14, 1980 was non-membership in Local 70, the Board's order is not entitled to enforcement. Accordingly, I respectfully dissent.