**HOERL & ASSOCIATES, P.C., Plaintiff–Appellee/Cross–Appellant,**

v.

**UNITED STATES of America, Defendant–Appellant/Cross–Appellee.**

**Nos. 92–1133 and 92–1135.**

United States Court of Appeals, Tenth Circuit.

June 8, 1993.

**227**

Laurin D. Quiat (John T. Kearns and Patrick M. Ryan, Kearns & Ryan, P.C., Englewood, CO, with him on the briefs), Denver, CO, for plaintiff-appellee/cross-appellant.

Linda E. Mosakowski (Michael J. Norton, U.S. Atty., James A. Bruton, Acting Asst. Atty. Gen., and Kenneth L. Greene, Atty., Dept. of Justice, with her on the briefs), Dept. of Justice, Washington, DC, for defendant-appellant/cross-appellee.

Before MOORE, MCWILLIAMS, and WOOD,* Circuit Judges.

JOHN P. MOORE, Circuit Judge.

This is a cross-appeal in an action for refund of FICA taxes. Taxpayer, Hoerl & Associates, is a professional corporation wholly owned by Richard and Jean Hoerl who are its only employees. Taxpayer executed contracts with the Hoerls under which each was to be paid a biannual salary, but the agreements did not state when or how the compensation was to be paid. In practice, each employee was paid for two years' services in one year. Those payments were made in different years, however. Taxpayer contends as a result of the contracts it is not obligated to pay FICA tax during the year an employee was "uncompensated." The only legal issue presented by this appeal is whether the contracts are nonqualified deferred compensation plans under 26 U.S.C. § 3121(v)(2)(A). We conclude that to the extent the contracts permitted Taxpayer to defer compensation, they are. Because significant facts have not been determined, however, we remand for further findings.

Richard and Jean Hoerl are licensed psychologists in the State of Colorado. They own equal shares of Hoerl & Associates and are its only officers.

Upon incorporation of Hoerl & Associates, the Hoerls entered into separate employment contracts with the corporation. Among other things, the agreements provided that employment could be terminated upon three conditions, including termination by either employer or employee upon three months' written notice.

Jean Hoerl was to receive a salary of $120,000 for the initial two-year period from May 1, 1982 to May 1, 1984, plus "such other additional compensation as [the Corporation] may from time to time determine." Until April 26, 1988, her agreement was amended every two years prior to expiration to adjust her biannual salary. For each biennium from May 1, 1984, Jean Hoerl was to be paid $132,000, $96,000, and $144,000, respectively.

Richard Hoerl's contract called for an initial salary of $120,000 for the period May 1, 1982 to May 1, 1984, plus the same provision for additional compensation found in his wife's contract. Richard's was also amended every two years, and for the two years following May 1, 1984, he was to receive $132,000. In subsequent amendments, his biannual compensation was increased to $144,000 and $180,000.

Each person worked full time for the corporation, but for each year from 1986 through 1989, one was compensated, while the other received nothing. The only exception occurred in 1986 when Richard received $5,000, while his wife was paid $125,000.

Taxpayer reported FICA taxes on the basis of what each employee actually received in the tax year. Therefore, when an employee was ostensibly uncompensated during the year, Taxpayer reported no FICA taxes for that employee. As a consequence, the government contends, Taxpayer effectively cut its FICA tax liability in half. Disagreeing with this result, the Internal Revenue Service deemed a portion of the income of each

* The Honorable Harlington Wood, Jr., Senior Circuit Judge for the United States Court of Appeals for the Seventh Circuit, sitting by designation.

employee was earned in the so-called "uncompensated" years and assessed Taxpayer for unpaid FICA taxes and interest on those taxes from 1986 through 1988 in the amount of $26,117.57.[1] Hoerl & Associates paid the assessment and filed a claim for refund. The IRS rejected the claim, and this action was filed in the district court.

Upon stipulated facts, the district court granted summary judgment. 785 F.Supp. 1430. The court found Richard Hoerl's compensation had been deferred, but Jean Hoerl's had not. The court therefore concluded Richard Hoerl's compensation plan was nonqualified within the meaning of the Tax Code, and Taxpayer owed the taxes on the salary of Richard. In keeping with its findings on Jean Hoerl's compensation, the court further held Taxpayer did not owe FICA taxes on her compensation. Because both sides were dissatisfied with that outcome, this cross-appeal followed.

■ An employer's FICA tax liability arises upon payment of wages. 26 C.F.R. § 31.3111–3 (1992). Liability attaches when wages are actually or constructively paid. 26 C.F.R. § 31.3121(a)–2(a). Wages are constructively paid when not actually transferred to the employee's possession but are credited to the account of or set apart for an employee, so that the employee can draw upon them at any time. 26 C.F.R. § 31.-3121(a)–2(b).

■ Because there are no facts indicating Taxpayer credited wages to an account for the employees or set them apart in any fashion, we agree with the district court that wages were not constructively paid during the "uncompensated" years. Indeed, that issue is not contested on appeal. Thus, the assessment made by the IRS can stand only if the payment of the biannual salaries constituted a nonqualified deferred compensation plan under 26 U.S.C. § 3121(v)(2)(C).

In simplistic terms, a *qualified* deferred compensation plan is one in which payments are made to an employee from certain trusts, annuity plans, pensions, exempt government deferred compensation plans, supplemental pension benefits, and "cafeteria plans" subject to certain qualifications. 26 U.S.C. § 3121(a)(5). A *nonqualified* deferred compensation plan is "any plan or other arrangement for deferral of compensation other than a plan described in subsection (a)(5)." 26 U.S.C. § 3121(v)(2)(C). Wages paid under a nonqualified deferred compensation plan must be taken into account for FICA purposes "as of the later of—(i) when the services are performed, or (ii) when there is no substantial risk of forfeiture of the rights to such amount." 26 U.S.C. § 3121(v)(2)(A).

The compensation plan providing payment for services to the employees in this case does not fall within any of those listed in § 3121(a)(5). To the extent it permits deferred payment of compensation, it is, then, a nonqualified plan by definition, and Taxpayer cannot avoid FICA taxes on compensation through the artifice of deferral.

■ At issue here, however, is whether compensation of the two employees was actually deferred. Taxpayer asserts there is nothing in the record to indicate when the employees rendered their services; therefore, it cannot be assumed, as it appears the government has done, compensation was paid monthly at the rate of ½₄ of the biannual compensation. Taxpayer also argues it is incorrect to assume that each employee earned compensation at least equal to the maximum FICA wage base for each year. In effect, then, Taxpayer contends our review is estopped by factual gaps in the record.

We do not agree that *those* deficits are present. The stipulation of fact executed by the parties states each employee "worked full time for the [Taxpayer] since May 1, 1982,

---

1. This graphic from stipulated facts will facilitate understanding of the analysis:

| Year | Richard's Compensation | Richard's FICA | Jean's Compensation | Jean's FICA |
|------|------------------------|----------------|---------------------|-------------|
| 1986 | $ 5,000 | $ 715 | $120,000 | $6,006 |
| 1987 | 160,000 | 6,263 | 0 | 0 |
| 1988 | 0 | 0 | 180,000 | 6,759 |
| 1989 | 180,000 | | 0 | |

and at all times relevant to this action." We infer "full time" means each employee rendered uninterrupted service throughout each tax year starting May 1, 1982. The stipulation and the contracts, which are silent on the subject of payment dates, also permit a logical inference the employees earned their salary as they worked; therefore, it is rational to assume their monthly incomes amounted to ½₄ of the biannual compensation. At that rate, the assumption each reached the maximum FICA wage base is not without foundation.

Yet, those assumptions do not solve the dilemma presented by Taxpayer's creative manipulation of the Tax Code. Both employees entered employment at the same time. Thus, as Taxpayer points out, if one's compensation was postponed to the end of the biennium and both received full compensation in alternate years, at least part of the compensation paid to the other employee had to have been *in advance*. No stretch of the definition of the word "deferred" would permit us to conclude a payment received in advance is deferred.[2]

Complicating our effort to pinpoint whether payments were deferred is the paucity of the record. We do not know when, during the two-year period, compensation was paid. Moreover, because each compensation period began on the first day of the fifth month of each tax year, correlation of payments with tax liability is at least speculative.

We know only that beginning with 1986, four years after the contract was executed, Richard Hoerl received $5,000 and Jean Hoerl received $120,000. Because the parties stipulated "payment [was] on a bi-annual basis," we assume 1986 and the subsequent years are representative of the payment schedule adopted in 1982 and pursued throughout the contract. We are left to speculate at which point in the years 1982, 1984, 1986, and 1988 Jean Hoerl received her pay, however.[3]

This problem is exacerbated because of the difference between the tax years and the employment contract periods. Thus, if Jean Hoerl actually received her biannual pay during 1982, her compensation for 1983 would not have been deferred, by definition. Thereafter, assuming she received full compensation in the years the contract was renewed, potentially all of her income was paid in advance.[4] The government fails to take this consequence into account.

The government contends the district court found both Hoerls were paid after their services were rendered, thus eliminating the prepayment issue. We do not, however, see those findings articulated in the record. Moreover, we cannot understand how they could be made upon the stipulation of facts without indulging in unwarranted speculation.

The district court attempted to solve the problem by construing the employment contract. Focusing on the word "rendered" in the clause of Richard Hoerl's first contract, the court concluded "services rendered"

2. *Webster's Third New International Dictionary* (1981), p. 591.

3. Taxpayer uses the factual gaps in the record as a sword, but it should recall the burden of proof ultimately rests with its suit to prove it was entitled to a refund. *Central Motor Co. v. United States*, 583 F.2d 470, 485 (10th Cir.1978).

4. Interestingly, the amounts received by both Richard and Jean do not jibe with the assumption each was to be paid at the rate of ½₄ of the contract compensation. For example, Jean's contract compensation for the period May 1, 1986 to May 1, 1988 was $96,000 which, inferably, would have been paid at the monthly rate of $4,000. Thus, for the calendar year 1987 and the first four months of 1988, she would have earned $4,000 × 16, or $64,000. The contract she executed for May 1, 1988 to May 1, 1990 provided a biannual salary of $144,000, which is inferably paid at the rate of $6,000 per month. Thus, for the period May 1, 1988 to December 31, 1988, Jean Hoerl would have earned $48,000. Combining the two annual salaries in accordance with the contract terms, in 1988 Jean Hoerl should have received $64,000 + $48,000, or $112,000. Yet, the parties stipulated she actually received $180,000! The discrepancy may be accounted for if Jean received income other than her contract compensation under the additional compensation clause; however, solving this riddle is not essential because in each year Jean would have exceeded the FICA base salary.

meant Richard would not be entitled to any compensation until the end of the two year employment period. While that interpretation makes literal sense, it is problematical whether it is consistent with fact.

Moreover, the contract's use of the past tense of the verb, "to render," does not negate the inference compensation was earned coincidentally with the performance of services so that salary accumulated throughout the year. Another construction of the word "rendered" would be that services were merely to precede earnings, and each day services were rendered compensation was earned. Indeed, to the extent compensation and services were exchanged between the parties, all compensation was for services "rendered." The issue, however, is when compensation was *paid and received*, and that issue is left only to speculation in this record.[5]

Consequently, we believe the factual gaps in the record will not permit complete resolution of this case, and we conclude summary judgment was improvidently granted. We must, therefore, remand the case to the district court for further findings. Nonetheless, we can reach legal conclusions that will provide a guide for final resolution.

The guide must focus on the concept of "substantial risk of forfeiture." Because the concept is not defined in § 3121(v)(2)(A), we turn to the legislative history for guidance. That points us to 26 U.S.C. § 83(c)(1). H.R.Conf.Rep. No. 47, 98th Cong., 1st Sess. 147 (1983), U.S.Code Cong. & Admin.News pp. 143, 437, *reprinted in* 1983-2 C.B. 336, 344.[6] The concept of "risk of forfeiture" is defined in § 83(c)(1) in this context: "The rights of a person in property are subject to a substantial risk of forfeiture if such person's rights to full enjoyment of such property are conditioned upon the future perfor-

mance of substantial services by any individual." Applied to compensation, this definition means a person is subject to a substantial risk of forfeiture of deferred income if its receipt is conditioned upon performance of substantial future services.

■ In this case, no provision of the employment contracts can be construed to suggest compensation earned prior to termination will be forfeited if either employee terminated. Indeed, while each employee is free to terminate upon ninety days' written notice, the agreement is completely silent concerning the employee's entitlement to the portion of the biannual salary actually earned up to that period. Without extrinsic evidence to the contrary, the agreement could be read to mean the employee would be entitled to a proportion of the biannual salary represented by the period between the execution of the contract and termination. It could also be read, however, to provide for full payment of the biannual compensation regardless of termination.

We must therefore conclude, to the extent either employee received deferred income under the employment agreements, both were the beneficiaries of nonqualified deferred compensation plans. Thus, Taxpayer is subject to FICA tax for deferred compensation paid to both. This conclusion effectively disposes of the Taxpayer's cross-appeal. We must **AFFIRM IN PART** and **REVERSE IN PART** the judgment of the district court and **REMAND** for the purpose of taking further evidence and making findings on the specific amounts of liability pertaining to both employees.

---

5. If Richard Hoerl actually received his biannual salary before May 1, 1986, a portion of that payment would also represent payment in advance. Unfortunately, since there was no stipulation about the exact time any payments were made, and since the contracts were silent on the date compensation was to be delivered, one can only speculate on these matters.

6. The Conference Committee Report states in part:

With respect to nonqualified deferred compensation plans, the conference agreement generally follows the Senate amendment that includes amounts deferred in the employee's FICA and FUTA wage base when services are performed or, if later, when there is a lapse of a substantial risk of forfeiture (within the meaning of sec. 83) of the employee's right to those amounts.