KRAFT FOODS NORTH AMERICA, INC., as successor by merger to Nabisco, Inc., RJ Reynolds Tobacco Co. as successor by merger to RJR Industries, Inc., RJR Nabisco Washington, Inc. and RJRN Policy Institute, Inc., RJ Reynolds Tobacco Holdings, Inc., formerly known as RJR Nabisco, Inc., and RJR Acquisition Corp., formerly known as RJR Nabisco Holdings Corp., Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. 02–342 T.

United States Court of Federal Claims.

Nov. 14, 2003.

Anne G. Batter, Baker & McKenzie, Washington, D.C., for plaintiffs. Mary B. Hevener, of counsel.

Benjamin C. King, Jr., Court of Federal Claims Section, Tax Division, United States Department of Justice, Washington, D.C., for defendant.

## OPINION AND ORDER

HODGES, Judge.

Kraft Foods and other plaintiffs made severance payments to qualified employees who lost their jobs "due to certain specified conditions." Plaintiffs paid employment taxes on such payments for several years, then sought refunds from the Internal Revenue Service. They argued that the severance payments were deferred compensation from nonqualified deferred compensation plans, and therefore partly exempt from FICA and FUTA employment taxes. The IRS rejected plaintiffs' requests for refunds, and plaintiffs sued.

Plaintiffs' severance payments were not deferred compensation. The severance plans were not nonqualified deferred compensation plans. Plaintiffs have not shown that they reasonably relied on pre-existing guidance to calculate their tax liability based on the timing rules of 26 U.S.C. § 3121(v)(2). We grant defendant's cross-motion for summary judgment.

## BACKGROUND

### A.

Employees normally earn wages or other benefits when they perform services. The Internal Revenue Service taxes such compensation in the year that it is received. The rules may be different for deferred compensation plans. *See, e.g.,* 26 U.S.C. § 3121(v)(2).[1]

Salaries or benefits may be imputed to employees who participate in nonqualified deferred compensation plans. That is, the IRS may tax wages or benefits that employees have not yet received. Timing rules governing deferred compensation require that taxes on payments from nonqualified deferred compensation plans accrue the *later* of when an employee performs services and when the deferred compensation vests. *See* 26 U.S.C. § 3121(v)(2).[2]

Employees whose deferred benefits vest before they perform related services are taxed on the deferred benefits each year. The later event is performance of services. 26 U.S.C. § 3121(v)(2)(A)(i). Employees whose payments of deferred compensation depend on future events or services are not taxed until their benefits no longer are subject to forfeiture. The later event is vesting. 26 U.S.C. § 3121(v)(2)(A)(ii).

### B.

Kraft and other plaintiffs had severance benefits known as continuation plans (Plans) for some employees. The employees received salary continuation benefits for "involuntary separation from employment due to certain specified conditions." The Plans covered eligible employees whom plaintiffs terminated because of corporate restructuring or failure to perform at minimum acceptable standards.[3] Plaintiffs' earliest continuation

plan was enacted in 1986; the latest amendment to their Plans was in 1995. Their claim for FICA tax refunds applies to tax years 1994 through 1996.

Kraft's Plan calculated severance payments according to employees' years of service and paid benefits for a maximum of twenty-four months after termination. Plaintiffs paid FICA taxes on the severance payments in each of the years they were paid, until 1996 when they filed amended returns. They argued that the terminated employees' services were completed before the severance benefits vested. This made the payments over a two-year period deferred compensation by definition. The payments were made according to a plan, so the severance benefits were part of a deferred compensation plan. If the Plan was a nonqualified deferred compensation plan, it was subject to the special timing rules applicable to nonqualified deferred compensation plans. *See* 26 U.S.C. § 3121(v)(2).

Plaintiffs contended that the year of severance was the year of vesting, and vesting was the last of the timing events to occur. *See* 26 U.S.C. § 3121(v)(2)(A)(ii). The timing rules allowed plaintiffs to pay FICA taxes on their employees' total benefits during their year of separation. This was so because the benefits vested *later* than employees performed related services. *Id.*

The timing issue is important because an employer pays FICA taxes on deferred compensation according to applicable tax rates and maximum annual wages subject to FICA taxes each year. *See* 42 U.S.C. § 430. Employers and employees pay FICA taxes on wages up to this maximum, or Cap. If Kraft paid taxes on the severance benefits each year, the payments could be less than the Social Security cap and fully subject to FICA

---

**1.** *See also* 26 U.S.C. § 3306(r) (FUTA), which is identical to 26 U.S.C. § 3121(v)(2) (FICA). The analysis for the two statutes is the same.

**2.** "Any amount deferred under a nonqualified deferred compensation Plan shall be taken into account for purposes of this chapter as of the later of-(i) when the services are performed, or (ii) when there is no substantial risk of forfeiture of the rights to such amount." 26 U.S.C. § 3121(v)(2).

**3.** The Plan also provided benefits to eligible employees whose positions were eliminated, who completed an assignment with no other position available, who refused transfer within their company to a position that required relocation of 35 miles or more, or whose new job was more than two salary grades levels below the employee's current job.

taxes. If the entire severance benefit were attributed to the same tax year, some payments could exceed the cap and escape such taxes.

The Internal Revenue Service concluded that payments from plaintiffs' continuation plans were not deferred compensation and it disallowed the refund claims. The severance plans could not be considered deferred compensation. The special timing rules of section 3121(v)(2) did not apply.

## DISCUSSION

### A. Deferred Compensation

The first issue is whether Kraft's severance payments from the continuation plan was deferred compensation. Plaintiffs claim that severance benefits were compensation and that the compensation was deferred because the Plans delayed payment beyond the time that employees earned the benefits. Employees accumulated severance benefits during their employment as "inchoate rights." The compensation was deferred because the Plans paid benefits over a period of two years after vesting. If the severance payments were deferred compensation, plaintiffs next must show that the severance Plans were nonqualified deferred compensation plans. See 26 U.S.C. § 3121(v)(2)(A).[4]

The special timing rules do not apply unless the payments were made from nonqualified deferred compensation plans. A nonqualified deferred compensation plan is defined as "any plan or other arrangement for deferral of compensation other than a plan described in subsection (a)(5)." 26 U.S.C. § 3121(v)(2)(C). The reference to (a)(5) excludes *qualified* deferred compensation plans and similar benefit plans. See 26 U.S.C. § 3121(a)(5). The parties agree that Kraft's continuation plan was not a qualified plan.

Section 3121(v)(2) includes the definition of nonqualified deferred compensation plans, the timing rules discussed earlier, and a provision addressing double taxation. 26 U.S.C. § 3121(v)(2). Kraft contends that the plain language of this section supports a broad interpretation of compensation. *See, e.g., Delong v. Department of Health & Human Servs.*, 264 F.3d 1334, 1339 (Fed.Cir.2001) (holding that construction of a statute begins with its plain language). Plaintiffs urge that the severance benefits accrued from services performed during employment. The benefits were equivalent to wages and should be treated as compensation for purposes of 26 U.S.C. § 3121(v)(2)(C). They point out that the IRS should not tax such benefits at all if they are not equivalent to wages.

Defendant maintains that the term "wages" has different meanings and purposes in the Code and does not include all benefits related to employment. *See* 26 U.S.C. § 3121(a) ("[T]he term 'wages' means all remuneration for employment, including the cash value of all remuneration (including benefits) paid in any medium other than cash ...."). *See also Gerbec v. United States*, 164 F.3d 1015, 1026 (6th Cir.1999) (wages "include certain compensation in the employer-employee relationship for which no actual services were performed").

### B. Special Timing Rules

The special timing rules applicable to nonqualified deferred compensation plans are crucial to plaintiffs' case. *See* 26 U.S.C. § 3121(v)(2)(A). These rules determine when deferred compensation will be "taken into account," for tax purposes. *Id.* Deferred compensation is earned currently but paid at a time in the future. Employers must account for deferred compensation as income for FICA taxes when their employees perform services or when the benefits vest, whichever is later. *Id.*

If deferred benefits depend on future services, or on the occurrence or non-occurrence of future events, employees may forfeit the compensation. For example, an employee who is required to continue employment for a period of years before receiving deferred compensation would have a substantial risk of forfeiture until then. The IRS would not tax that employee on the amount deferred

---

4. Severance payments are not deferred compensation under current law. *See* Treas. Reg. § 31.3121(v)(2)–1(v)(4)(iv)(B) (1999).

until or unless the uncertainty were removed and the benefits vested. *Vesting* would be the later of the two events for purposes of the special timing rules; the amount deferred would be taken into account for tax purposes when no substantial risk of forfeiture remained. 26 U.S.C. § 3121(v)(2)(A)(ii).

If an employee's deferred benefits are guaranteed according to a plan, by contract or otherwise, the employee's rights to payment are vested before all services are performed. In that case, *payment for services performed* would be the later of the timing events. 26 U.S.C. § 3121(v)(2)(A)(i). Deferred compensation would be imputed to the taxpayer and the entire amount would be taxable each year.[5]

Traditional nonqualified deferred compensation plans connect wages from services performed to compensation related to those services. *See, e.g., Buffalo Bills, Inc. v. United States,* 31 Fed.Cl. 794 (1994). If an employee has a legally binding right to deferred income, the employee's annual taxable benefits normally can be calculated easily.[6] Similarly, employers can account for deferred benefits that are subject to forfeiture for a period of years because the timing rules would assess taxes on the benefits when they vest by the passage of time or otherwise.

Plaintiffs' continuation plans contrast with traditional nonqualified deferred compensation plans. Kraft's employees did not accumulate benefits according to specific services or to a particular schedule. Employees' rights under the Kraft Plan arose when Kraft terminated their employment involuntarily. Employees could forfeit their sever-

ance benefits only by *not* being terminated involuntarily. The possibility of employees' benefits vesting by termination persisted until they retired or left the company voluntarily. The alternative event contemplated by the timing provision of section 3121(v)(2), *payment for services performed,* could not apply in these circumstances.

Plaintiffs use employees' involuntary separation to create a period of deferral for their benefits. The Plan pays benefits over a period of two years after separation, and that delay both accounts for and measures the employee's deferred compensation. Plaintiffs argue that "there was a forfeiture risk applicable during all the years of employment; for involuntarily terminated employees, that risk lapsed upon an employee's involuntary termination, and the benefits were paid in subsequent calendar years. Consequently, the payment of the benefits was deferred." This is a circular argument that creates a period of delayed compensation that otherwise would not exist. It does not permit a connection between services rendered by employees and benefits paid for those services.[7] Such a connection is an important feature of normal nonqualified deferred compensation plans.

Payments from plaintiffs' severance plans had no connection with their employees' services.[8] One could not use the timing rules to measure the relationship between performance of services and vesting of benefits. *See* 26 U.S.C. § 3121(v)(2)(A). If a risk of forfeiture applied during all the years of employment as Kraft contends, vesting always would have been the "last" event. *Id.* For

5. One purpose of the special timing provision of section 3121(v)(2) may be to prevent a situation similar to the one at issue here. That is, an attempt to defer salaries or other benefits to reduce an employer's obligation to pay Social Security taxes. The IRS assigns benefits to the appropriate tax year using the date the benefits are earned or the date they become vested, whichever is later. *See, e.g., Hoerl & Assocs., P.C. v. United States,* 996 F.2d 226 (10th Cir. 1993).

6. Special rules are available for amounts deferred that are not "reasonably ascertainable." *See, e.g.,* Treas. Reg. 31.3121(v)(2)–1(e) (1999).

7. Plaintiffs acknowledge that severance paid in a lump sum would not qualify as deferred compen-

sation as they define it. This confirms that Kraft's "deferral" arises only from its delayed payment of severance benefits over a two-year period. This approach omits the section 3121(v)(2)(A)(i) alternative measure related to the timing of services performed.

8. Plaintiffs argue that "nowhere in the law" is it required that payments be related to specific services. However, the timing rule seems to require just that. One of the dates on which deferred compensation is to be taken into account for FICA tax purposes is the date "when the services are performed." 26 U.S.C. § 3121(v)(2)(A)(i).

many employees covered by Kraft's Plan, vesting never occurred.

### C. Reasonableness

█ Plaintiffs argue that even if the plain meaning of the statute does not encompass their continuation plans and their method of calculating FICA and FUTA taxes, they are entitled to the benefit of a reasonableness provision in the IRS' transitional rules. Guidelines issued both in 1994 and in 1996[9] articulated a "reasonable interpretation standard" for employers who were using section 3121(v)(2) to calculate FICA tax liability for periods ending before January 1, 2000.[10] The reasonableness standard is acknowledged in the Final Regulations. *See* Treas. Reg. § 31.3121(v)(2)–1(g)(2) (1999).

The transitional relief provides that an "employer may rely on a *reasonable, good faith interpretation* of section 3121(v)(2), *taking into account pre-existing guidance.*" Prop. Treas. Reg. § 31.3121(v)(2)–1, 61 Fed. Reg. 2194 (January 25, 1996) (emphasis added). The Proposed Regulations were to "provide guidance to taxpayers who must comply with section 3121(v)(2)..." *Id.* The Overview of the Proposed Regulations states, "[r]ecognizing the practical administrative problems that can be encountered by taxpayers in this area, the proposed regulations are designed to be workable, to minimize complexity, and the provide appropriate flexibility for taxpayers." *Id.* The reasonable reliance standard was an effort by IRS to assist employers who wished to rely on the special timing provisions before IRS adopted the Final Regulations. The 1996 Proposed Regulations and the Final 1999 Treasury Regulations are substantially the same.

### D. Severance Plan

The 1994 Notice and subsequent guidance announced that IRS would not question a taxpayer's calculation of FICA liability so long as the employer used a reasonable, good faith interpretation of section 3121(v)(2). The 1999 Treasury Regulations provide that "payments not related to the performance of specific services on a specific date, such as *severance pay,* vacation pay, and sick leave, cannot be deferred compensation under section 3121(v)(2)." Treas. Reg. § 31.312(v)(2)–1 (1999); 26 U.S.C. § 3121(v)(2) (emphasis added). The question is, what was the status of severance pay earlier, before plaintiffs filed amended returns seeking refunds for taxes paid on account of severance benefits.

The 1996 Proposed Regulations are consistent with the 1999 Final Regulations. The Proposed Regulations state that severance pay would not be considered deferred compensation for purposes of section 3121(v)(2):

> The regulations provide that certain welfare benefits, including vacation benefits, sick leave, compensatory time, disability pay, *severance pay,* and death benefits, do not result from the deferral of compensation for FICA purposes. Neither § 3121(v) nor the legislative history relating to § 3121(v) indicates that Congress intended to modify the long established FICA tax treatment of such benefits.

Prop. Treas. Reg. § 31.3121(v)(2)–1, 61 Fed. Reg. 2194, 2196 (January 25, 1996) (emphasis added).

The Proposed Regulation contained a series of examples explaining the application of rules addressing deferred compensation. Example 9:

> (i) Employer establishes a plan which provides for payments solely upon an employees dismissal from employment .... The amount of the payments to an employee is based on the length of continuous active service with Employer at the time of dismissal, and is paid in monthly installments over a period of three years.
>
> (ii) Because benefits payable under the plan upon termination of employment are payable only upon an employee's involuntary termination, the plan is a *severance pay plan* within the meaning of paragraph (b)(4)(iv) of this section. Thus, the benefits are not treated as resulting from the

---

9. *See* Prop. Treas. Reg. § 31.3121(v)(2)–1, 61 Fed.Reg. 2194 (January 25, 1996).

10. The IRS first stated this standard in a 1994 Notice of Proposed Rulemaking, informing taxpayers that it "intend[ed] to publish guidance under sections 3121(v)(2) ...." I.R.S. Notice 94–96, 1994–2 C.B. 564, 1994 WL 593756.

deferral of compensation for the purposes of section 3121(v)(2).

*Id.* at 2202 (emphasis added). This guidance was available to plaintiffs for more than a year before they filed claims for refunds with IRS.

Plaintiffs assert that the Proposed Regulations excluded severance plans from nonqualified deferred compensation because the law on that point had not been clear before. That is, severance payments may have qualified as deferred compensation before the Treasury Department issued the Proposed Regulations. Plaintiffs cite congressional testimony from a Treasury official who had raised such questions years earlier, stating that it was "not clear whether ... (severance payment plans) will receive section 3121(v)(2) treatment." [11] Plaintiffs complain that the "taxpayer was left with little choice but to rely on the statute and the then-existing case law to decide how it should treat the severance payments."

The Proposed Regulations were not a departure from previous treatment of deferred compensation. The Regulations were consistent with legislative history and with the IRS position on the provisions at issue in this case. If plaintiffs knew of the testimony of the Treasury official, Mr. McGovern, they must not have considered it at the time. In 1990 and subsequent years they did not treat the severance benefits as nonqualified deferred compensation.

The 1994 Notice and the 1996 Proposed Regulations released by the Treasury Department were consistent with prior statements by the IRS concerning the tax treatment of severance plans.[12] The 1996 Proposed Regulations explained that "[n]either section 3121(v) nor the legislative history relating to section 3121(v) indicates

that Congress intended to modify the long-established FICA tax treatment of [deferred compensation] benefits." Prop. Treas. Reg. § 31.3121(v)(2)–1, 61 Fed.Reg. 2194 (January 25, 1996).

The argument that plaintiffs acted reasonably in the face of confusion and uncertainty is not convincing. Plaintiffs assert that they considered various sources of guidance in forming their position, but they ignored the most authoritative guidance available-the Proposed Regulations. The Regulations informed taxpayers that severance plans of the type used by Kraft and others were not nonqualified deferred compensation plans. The Proposed Regulations were available for more than a year and a half before plaintiffs filed their first amended return.

Kraft argues that ignoring the 1996 Proposed Regulations was reasonable because the Regulations were not binding and they were subject to comment before becoming effective. The Regulations qualified as preexisting guidance, however, even if they were not final. Plaintiffs had appropriate guidance before and during the time that they filed amended returns seeking refunds.[13]

### E. Case Law

Plaintiffs did not reasonably rely on case law to interpret their severance payments as nonqualified deferred compensation plans. They cite two cases, *Buffalo Bills, Inc. v. United States,* 31 Fed.Cl. 794 (1994), and *Hoerl & Assocs., P.C. v. United States,* 996 F.2d 226 (10th Cir.1993) as appropriate "preexisting guidance." The court in *Buffalo Bills* ruled that deferred compensation included incentive payments made to employees during the year after they performed related services. *Buffalo Bills,* 31 Fed.Cl. at 802. It also held that severance payments

---

**11.** IRS Assistant Chief Counsel James McGovern (Employee Benefits and Exempt Organizations) in testimony before the Social Security Subcommittee of the House Ways and Means Committee, April 5, 1990.

**12.** They were consistent also with instructions for completing tax forms: Form W–2 states that dismissal pay and similar benefit plans are not nonqualified deferred compensation plans. *See* Instructions to Tax Form W–2, Box 11 (1993—1998).

**13.** Apparently, plaintiffs initially interpreted the timing rules as the IRS did in its Proposed Regulations and its Final Regulations. Before the Proposed Regulations were issued, plaintiffs had routinely treated severance benefits as income to their employees in the years they were paid. After IRS issued the Proposed Regulations in 1996, plaintiffs filed amended returns claiming that the benefits should be accounted for in the same year that an employee was terminated.

made to employees because of retirement were exempt from FICA taxes. *Id.* at 805. Kraft cites this case as an example of a court interpreting relevant code section broadly. In fact, the court based its ruling on the statute's plain meaning.

The Government argued in *Buffalo Bills* that the statute should contain a minimum deferral period. The court applied the definition of deferred compensation without such a minimum period because the statute did not include one. Moreover, that case involved a traditional deferred compensation plan by which the employee was paid compensation for his services in the following year. The Kraft Plan did not offer such a circumstance. The IRS could not measure a time that plaintiffs' employees performed services for which they were later compensated, and compare it to the time of vesting. *See* 26 U.S.C. § 3121(v)(2)(A).

The court's decision in *Hoerl* is similar because it too interprets the statute according to its plain meaning. Mr. and Mrs. Hoerl were psychologists who agreed with their professional corporation, the taxpayer, each to take one salary every other year in lump sums. That is, Mr. Hoerl would take his salary one year and Mrs. Hoerl would take hers the next. The Hoerls and their corporation attempted to avoid FICA taxes in this way. The appeals court held that this arrangement was a nonqualified deferred compensation plan to the extent that it permitted deferred payment of compensation. The issue was whether the parties deferred their compensation. *Hoerl*, 996 F.2d at 228. The court remanded the case for additional findings. *Id.* at 230. These cases do not support plaintiffs' argument that their severance plans were nonqualified deferred compensation plans.

Plaintiffs' efforts to broaden the meaning of the term "services" as used in the timing provision highlights the importance of that term to the timing rules. *See* 26 U.S.C. § 3121(v)(2)(A)(i) (stating that an amount deferred under a nonqualified deferred compensation plan is taken into account when *the services* are performed). Plaintiffs cite a Federal Circuit case for the principle that the term services includes "the entire em-ployer-employee relationship for which compensation is paid." *Associated Elec. Coop. v. United States*, 226 F.3d 1322, 1327 (Fed.Cir. 2000) (*citing Social Sec. Bd. v. Nierotko*, 327 U.S. 358, 365–66, 66 S.Ct. 637, 90 L.Ed. 718 (1946)).

The issue in *Associated* was whether voluntary severance payments were wages and therefore subject to FICA taxes. *Associated Electric*, 226 F.3d at 1322. The court did not decide whether the voluntary severance package was a nonqualified deferred compensation plan. It was concerned only with whether the payments were subject to FICA tax liability. The court's definition of "service" reflected the broad scope and coverage of the Social Security Act. *Id.* at 1326–27 (*citing Nierotko*, 327 U.S. at 365–66, 66 S.Ct. 637 ("The very words 'any service ... performed ... for his employer,' with the purpose of the Social Security Act in mind, import breadth of coverage.")).

Kraft paid its employees not according to services they performed, but when it terminated their services. Employees did not have a legal right to payments from the Plan while the company was using their services. No connection existed between their services and the possibility that the Plan would issue them severance payments. Plaintiffs used employees' length of service only to calculate the amount of their severance payments upon involuntary termination.

## CONCLUSION

Payments from Kraft's Plan were not deferred compensation. The continuation plans were not nonqualified deferred compensation plans, so the timing rules do not apply. Severance payments from the continuation plans were subject to FICA taxes in the years that the Plan made payments to employees. Plaintiffs misused the "reasonable interpretation standard" to justify their claims for refunds. Their interpretation of the section 3121(v)(2) timing rules was neither reasonable nor consistent with available pre-existing guidance. The Internal Revenue Service had concluded that severance payments were not deferred compensation before plaintiffs filed their amended returns.

Plaintiffs' motion for partial summary judgment is DENIED. Defendant's motion for summary judgment is GRANTED. The Clerk will dismiss plaintiffs' complaint. No costs.

